CRUM *v.* FENDIG *et al.,* executors.

The right of the plaintiff to a recovery in this case is based upon the claim of her "virtual" adoption as a child by the former owner (who was deceased at the time the suit was filed) of the property in which the plaintiff claims an interest. The plaintiff fails to show, by proper allegations in the petition, a contract to adopt, made with any one competent to contract; and the court did not err in sustaining a general demurrer to the petition.

No. 3823. FEBRUARY 14, 1924. REHEARING DENIED MARCH 1, 1924.

Equitable petition. Before Judge Highsmith. Glynn superior court. May 8, 1923.

Mrs. Mary Magdeline Crum filed her petition seeking equitable relief as well as specific performance of a contract, and other equitable relief, against Albert Fendig and J. W. Tippins as executors of the estate of Mrs. Clara M. Clark, deceased. Plaintiff claims a one-half undivided interest in the estate, by reason of the fact that she was the adopted daughter of R. T. Clark, deceased, who died intestate, leaving Mrs. Crum and Mrs. Clark as his sole heirs at law; that Mrs. Clark had and owned no other property except such as was inherited by her from R. T. Clark; that Mrs. Clark, who was the widow and one of the heirs at law of R. T. Clark, undertook by will to dispose not only of her one-half interest in the estate of R. T. Clark, but also the one-half interest of petitioner; that Mrs. Crum and Mrs. Clark entered into an agreement, after the death of R. T. Clark, that so long as Mrs. Clark should live there was to be no division of the estate of R. T. Clark, and that after the death of Mrs. Clark petitioner was to have the entire estate. The prayers were, for specific performance of this

agreement, and that the executors under the will of Mrs. Clark be restrained and enjoined from any further proceedings with reference to the property and the will of the said Mrs. Clark.

The defendant executors filed general and special demurrers to the petition. The court passed only upon the general demurrer, sustaining it and dismissing the case.

*Farr & Powell* and *Reagan & Reagan,* for plaintiff.

*Bennet, Twitty & Reese,* for defendants.

BECK, P. J. (After stating the foregoing facts.) We are of the opinion that the court properly sustained the general demurrer. The foundation of the plaintiff's right of action must be looked for in the allegations showing her adoption by R. T. Clark. The allegations in which the adoption claimed is attempted to be shown are to be found in paragraph 6 of the petition. This paragraph is as follows: "Your petitioner shows that she was the adopted child of the said R. T. Clark, deceased, in that, being of tender years, not exceeding three, she was taken into the home of the said R. T. Clark and reared by him, adopting his name and marrying with his consent in the name of Clark at the age of fifteen. At various times and places and during the time your petitioner was living with the said R. T. Clark, deceased, the said Clark did represent, contract, and agree that in the event of his death she would be amply provided for; and the said R. T. Clark did represent at various times and places, not only to your petitioner but to various other individuals, that he had adopted your petitioner as his child, and it was generally known that the necessary legal papers had been taken out with reference to such adoption, and that petitioner was the adopted child of the said R. T. Clark." No allegation in this paragraph can be treated as alleging a valid contract of adoption. In its entirety this paragraph merely shows that the plaintiff, when a child of three years of age, was taken into the home of Clark and reared by him. The plaintiff herself could scarcely have entered into a binding contract at that age. The paragraph taken as a whole cannot be treated as one alleging that Clark made a contract with this child three years old. The word "adopt" in some form is used several times in this paragraph. It is alleged that the child adopted the name of Clark, and married with Clark's consent in that name, when she was fifteen years of age. It is also alleged that at various times

34

during the period through which petitioner lived with R. T. Clark the latter "did represent, contract, and agree that in the event of his death she would be amply provided for." The allegation in this last quotation does not set up a contract to adopt, nor to give any certain part of his estate at his death, by will or otherwise, to petitioner. It is also alleged that Clark "did represent at various times and places, not only to petitioner but to other individuals, that he had adopted petitioner as his child, and it was generally known that the necessary legal papers had been taken out with reference to such adoption, and that petitioner was the adopted child of R. T. Clark." No contract of adoption which, upon performance or part performance, could amount to what is sometimes called a virtual adoption is here alleged; but if this paragraph in any way lays a foundation for this suit, it is in the allegation that "the necessary legal papers had been taken out with reference to such adoption." That, of course, refers to a statutory adoption; but the entire paragraph and other allegations in the petition show that there was no statutory adoption; that the petitioner is relying upon an equitable or "virtual" adoption, and the brief of counsel for plaintiff in error treats the petition as one setting forth a virtual adoption. But virtual or equitable adoption must be founded upon a contract and performance in accordance with the terms of the contract by the person claiming to have been adopted; and no contract is here found. Plaintiff in error relies largely upon the decision in the case of *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773), and cases following it and laying down the same principle. The rights of the party claiming virtual adoption in that case grew out of a contract expressly alleged. In that case it appeared that the plaintiff, Mrs. Wilson, when an infant three months of age, was carried to the house of Mrs. Puckett by the maternal grandmother of the plaintiff and turned over to the care and custody of Mrs. Puckett under an agreement by her mother and grandmother that Mrs. Puckett was to have the sole custody, services, and company of the child during the minority of the petitioner, in consideration of Mrs. Puckett's agreement and promise to take petitioner and do unto her as her own child and "to adopt her as such, with all the rights of a child related to her as such by blood." Performance of her duties as an adopted child was also alleged by the plaintiff. The court held, under these

facts alleged and fully set forth in the petition, that it was a case of virtual adoption. Another important question decided in that case related to the right of the plaintiff, who was not a party to the contract upon which she predicated her claim to the relief, to bring the suit; and the court reached the conclusion, under the facts alleged, that plaintiff could maintain the suit. In other cases cited by plaintiff, which follow the case of *Crawford* v. *Wilson,* supra, the fact that there was a contract of adoption is distinctly shown. We are of the opinion that the decision made in the *Crawford* v. *Wilson* case is sound, but we do not think the ruling should be extended; and to hold that the petition in the present case sets forth a cause of action entitling petitioner to the relief sought would be an extension of the principle of virtual adoption as announced in the case last referred to.

It follows from what we have said that the court did not err in sustaining the general demurrer to the petition.

*Judgment affirmed. All Justices concur, except*

Russell, C. J., dissenting. I think that the court erred in dismissing the petition upon general demurrer. The subject of statutory adoption and the provisions contained in § 3016 of the Civil Code of 1910 have nothing to do with the question involved in this case; for the petition which was dismissed does not predicate the action upon that section of the Code, nor allege that there ever was a statutory adoption. The ruling in *Crawford* v. *Wilson,* 139 *Ga.* 654 (supra), was based, as I think this case should be decided, upon equitable rights, and in that case, as in this, a statutory adoption was neither alleged nor proved. An equitable remedy was established whereby the course of conduct pursued by one who took an infant into his care, custody, and control completely changed the life of this infant and received the benefits flowing to a parent, such as companionship, obedience, affection and filial service, thereby inducing in the child a reasonable belief that he or she had in fact been adopted "virtually," even if not in compliance with the provisions of § 3016 of the Code; and that such a child has equitable rights, growing out of the relationship created by the proposing adopter, which equity and good conscience will not permit to be destroyed. To prove a virtual adoption I do not think it is always necessary to show that a contract of adoption (in the strict legal meaning of that term) had been made with

one competent to contract or with one authorized to contract in behalf of the infant child. It seems to me that under the principle announced in the decision just cited the right to have a virtual adoption decreed in her favor could be enforced even in behalf of a nameless waif, provided it was clearly proved that the decedent had virtually adopted the child. The virtual adoption does not rest entirely upon a contract. It rests as much upon clear proof of the intention and conduct of the virtual foster parent and the conduct of the child in the relationship in which she has been induced to believe she sustains towards the adopter. The essentials required to constitute a virtual adoption are entirely independent of and foreign to the legal requirements as to statutory adoption as contained in § 3016 of the Civil Code; and I construe the word "adoption," as contained in the petition (and to which reference is made in the opinion of the majority), to refer only to virtual adoption. The word "adopt," in a petition attempting to set up a legal adoption, might be demurrable as the mere conclusion of the pleader, in the absence of a statement of facts necessary to constitute an adoption at law; but in my opinion, sufficient facts were stated in the present petition to permit the use of the word "adopt" when considered as referring only to the establishment in equity of a *virtual* adoption in order to obtain an injunction to protect the rights of one who claims to have been virtually adopted until an adjudication as to that branch of the case.

Nothing decided by this court in *Bell* v. *Elrod*, 150 *Ga.* 709 (105 S. E. 241), is in conflict with my view of this case. It was properly held in that case that the petition was subject to general demurrer, because it was a suit to enforce an oral promise on the part of the decedent that he *would* adopt his illegitimate daughter. The question there thus presented is entirely different from the issue in this case, where facts are alleged which, though not disclosing a promise to legally adopt in accordance with § 3016 of the Civil Code, show that the decedent did virtually adopt the plaintiff as a matter of fact, thus changing the entire course of her life and receiving from her all the care and affection that a child could have rendered, and that obedience and respect which is a parent's due. The principle of this case is the same, in my opinion, as that which controlled in *Lansdell* v. *Lansdell*, 144 *Ga.* 571, 573 (87 S. E. 782), where this court held "that the facts alleged gave to the child such an

equitable status and such equitable rights as she could enforce in a court having equitable jurisdiction."

If "virtual adoption" cannot be established except upon proof of a contract between the would-be adopter and some other person having the right to contract in behalf of the infant, then no matter how perfect a case might be made of such acts as evidence a virtual adoption by the establishment and continuance for no matter how long a time of a perfect relationship of parent and child, and no matter how great the service that might have been performed by an infant that never knew otherwise than that the ostensible parent was her parent in truth and in fact,—a virtual adoption could never be established if the would-be adopter neglected to pursue the plan of statutory adoption provided in § 3016 of the Code. One could never adopt a waif whose natural guardian or nearest of kin were not known, except by the statutory method; and the ignorance of such an one would in some cases defeat the most dearly cherished purpose of his lifetime. In *Crawford* v. *Wilson,* supra, a contract was not required, and the court defined a virtual adoption as follows: "A parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, by decreeing the child entitled as a child to the property of the obligor, undisposed of by the will." The principles upon which the decision in the *Crawford* case is based, were illustrated by Mr. Justice Evans as follows: "as, when a gentleman of wealth enters into an agreement with a poor man that the former will take the child of the latter, bring him up in affluence, and leave him certain property, and there is part performance, the child is entitled to have the agreement carried out, 'his right,' says the author [Mr. Waterman], 'being derived, not from the contract itself, but from what has been done under it, and the wrong he will otherwise sustain.'" Proceeding, Mr. Justice Evans said: "Where one takes an infant into his home upon a promise to adopt such as his own child, and the child performs all the duties growing out of the substituted relationship of parent and child, rendering years of service, companionship, and obedience to the foster parent, upon the faith that

such foster parent stands in loco parentis, and that upon his death the child will sustain the legal relationship to his estate of a natural child, there is equitable reason that the child may appeal to a court of equity to consummate, so far as may be possible, the foster parent's omission of duty in the matter of formal adoption. . . Therefore, when we consider that this action is not to recover for services under her mother's contract, but is grounded *on what was done under it,* the changed domestic relation which was contemplated to be accomplished by the contract, and the personal rights which would accrue to petitioner from the act of adoption by operation of law, we see no reason why it cannot be maintained by petitioner in her own name."

So if we construe the word "adopt" as a promise on the part of the decedent in this case that he would formally adopt the plaintiff in the manner provided by law, and even if the promise was made only to the child or in her hearing, and yet nevertheless, by reason of this promise, the domestic relation was changed as indicated by Mr. Justice Evans, the controlling reason inducing the decision in the *Crawford* case still remains and inheres in the case at bar. "The suit is in equity; and the changed domestic relation between the foster parent and foster child, together with the right of inheritance under the law, as a result of the changed parental relation, if formal adoption had been consummated under the contract, serves to bring this case within the exception recognized in *Sheppard* v. *Bridges* [137 *Ga.* 615 (74 S. E. 245)], supra." The word "obligation," in the definition which we have just quoted above, is by no means synonymous with the word "contract." An obligation may render a party morally or equitably subject to perform a certain act. *Worth* v. *Daniel,* 1 *Ga. App.* 15 (57 S. E. 898). A contract is an agreement between two or more parties as to the doing or not doing of a certain specified act, and there must be parties able to contract, willing to contract, a subject-matter, and the meeting of the minds of the parties at the same time and in the same sense. The petition says that he promised to adopt this child. It is inferable that the promise was made to her. It is inferable that numerous witnesses heard the promise. If more definite information had been desired by the defendant as to whom the promise was made, this could have been reached by

special demurrer; but the lack of full information as to this particular feature of the case did not, in my opinion, authorize the sustaining of a general demurrer and the dismissal of the action as a whole.

I think the trial judge erred in sustaining the demurrer and dismissing the petition, and that his judgment should be reversed.