## SCOTT *et al. v.* SCOTT.

No. 7156. October 17, 1929.

*J. A. Darsey* and *W. H. Connor,* for plaintiffs.

*Culpepper & Murphy,* for defendant.

Beck, P. J. Roy Scott and Henry Scott brought their petition against Mrs. Belle Scott, the widow of B. H. Scott, alleging that the last named, in 1908, took plaintiffs from the Decatur Orphans Home under a parol agreement with "Howard L. Crumley, superintendent of the home, to adopt them;" that they lived with B. H. Scott until his death; that they were then six and eight years old, and Scott "took them into his own family and to his home as his own children, and has kept them there from the day he obtained them until the day of his death, all the while treating them as his own

children, receiving the proceeds of their labor, and he in turn supplying their actual needs in the way of maintenance;" that "B. H. Scott and his wife, Mrs. Belle Scott, had no children of their own, and that Roy and Henry were to all intents and purposes adopted by them as their own children, and they were so recognized by B. H. Scott until the time of his death, and they were given his surname;" that, "so far as they know or can find out, there was never a statutory adoption of them, but there was a parol agreement of adoption made at the time they were secured from the Orphans Home, and this act was accompanied by a virtual adoption of them by B. H. Scott as his children, and they were so recognized by him until the day of his death, were so considered by him, and it was so stated;" that there was no administration on the estate of B. H. Scott; that Mrs. Scott had taken possession of the personal property and the money left by B. H. Scott, as well as the real estate; that no bond had been given, etc. The prayers were for injunction and the determination of the status of petitioners, and whether they were the adopted children of B. H. Scott and entitled to share in his estate. The petition was amended. The court sustained a general demurrer and dismissed the petition; to which judgment the petitioners excepted.

■ The court properly sustained the general demurrer. No statutory adoption of petitioners by Scott is alleged, and there is no sufficient allegation of a parol contract to adopt them. It is alleged that Scott procured the children from "the superintendent of the Orphans Home on a parol agreement to adopt them," but it does not appear how the superintendent of the home had the right to enter into a contract with Scott for their adoption. In section 2845 of the Civil Code provision is made for the incorporation of charitable institutions, and in section 2847 it is provided that "the directors or board of managers of such institution shall have power to make by-laws and regulations for the government of the institution, and may control the children under their care, and 'prescribe their course of instruction and management to the same extent and with the same rights as in the case of natural guardians." And in § 2848 it is provided, that, "In all cases where a child shall have been surrendered by its natural guardian or custodian to the care and management of any such institution by any instrument or declaration in writing, or committed to its custody according to law,

it shall be lawful for the directors or board of managers, at their discretion, to place such child, by adoption or at service, in some suitable employment, and with some proper person or persons." If petitioners in this case rely upon the provisions of the two sections last referred to, no such compliance with their provisions is shown as would give validity to any contract for the adoption by Scott, who received them. There is nothing in either of these sections that would give a mere superintendent of the home the authority to execute such a contract. And it is not necessary to discuss the question as to whether the directors or board of managers of such an institution as that referred to could make a contract; but upon this question reference may be made to *Kennedy* v. *Meara*, 127 *Ga.* 68 (56 S. E. 243, 9 Am. St. R. 396). In that case it was said: "The word 'adoption' in this act is to be so construed as to confer upon the person receiving the child no greater power over the child than the benevolent institution itself had in the first instance; and that is, to retain the custody of the child until the time arrives when the child can be properly returned to its parent, or returned under certain circumstances to the court from which it was received. Although the institution may in form provide for the adoption of the child by the person to whom it is committed, such adoption would amount to a binding to service to such persons for and during the period of time that the institution itself would have the right to retain the custody of the child."

None of the allegations in the petition show an adoption of petitioners in the mode pointed out in section 3016 of the Code, which relates to the modes of adopting a child. While some of the allegations are vague and indefinite, it is apparent that petitioners rely upon the doctrine of virtual adoption, as stated in *Crawford* v. *Wilson*, 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773). But under the principles there laid down the present petition can not withstand a general demurrer; because in that case it was said: "The authorities very generally establish the proposition that a parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by both parties during the obligor's life, may be enforced, upon the death of the obligor, by adjudging the child entitled as a child to the property of the obligor who dies without disposing of his property by will. Van Tine *v.* Van Tine (N. J. Ch.), 1 L. R.

A. 154 (15 Atl. 249) ; Van Dyne *v.* Vreeland, 3 Stockton, 370; Sharkey *v.* McDermott, 91 Mo. 648 (4 S. W. 107, 60 Am. R. 270) ; Haines *v.* Haines, 6 Md. 435 ; Jaffee *v.* Jacobson, 48 Fed. 21 (14 L. R. A. 352) ; Healey *v.* Simpson, 113 Mo. 340 (20 S. W. 881) ; Chehak *v.* Battles, 133 Iowa, 107 (110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140) ; Gates *v.* Gates, 34 App. Div. 608 (54 N. Y. Supp. 454). In these and in other cases various reasons were urged against the specific performance of such an agreement. It was said that an agreement to adopt a child is too indefinite to decree such child rights to property as an heir ; but it was replied that where a parent surrenders his child to another who accepts the custody on the promise to adopt the child as his own, it can not be doubted that the parties intended that the act of adoption, when consummated, would carry with it the right of inheritance, and that equity would consider that done which ought to have been done, and decree the child's right to his inheritance as if formal adoption had taken place." Here it clearly appears that before a court could adjudge that there was a virtual adoption it should appear that there was a contract entered into by parties capable of contracting, and acted upon by both parties during the obligor's life, for the adoption of one relying upon an alleged virtual adoption. In *Mock* v. *Neffler,* 148 *Ga.* 25 (95 S. E. 673), it was said: "Properly construed, the allegations of the petition do not show a right of disposition in the mother of petitioner. It is not alleged that the petitioner was an illegitimate child, or that her father was dead, or that he had lost his parental control, or that he had ratified or acquiesced in the contract made by petitioner's mother with Eliza A. Charlton. The first essential of a contract for the adoption of a child, where no statutory adoption exists, is that it be made between persons competent to contract, and be based upon sufficient legal consideration. Fugate *v.* Allen, 119 Mo. App. 183 (3) (95 S. W. 980) ; Civil Code, § 3021." And in *Crum* v. *Fendig,* 157 *Ga.* 528 (121 S. E. 825), it was said: "But virtual or equitable adoption must be founded upon a contract and performance in accordance with the terms of the contract by the person claiming to have been adopted; and no contract is here found." Following this statement there is a discussion of the case of *Crawford* v. *Wilson,* supra. It follows from what we have said that the court did not err in sustaining the general demurrer to the petition which sought a decree

establishing the right of petitioners to share as children in the estate of B. H. Scott.

■ The ruling made in the second headnote requires no elaboration. *Judgment affirmed. All the Justices concur.*