## LUBECK *v.* DOTSON *et al.*

No. 13650.   MAY 19, 1941.

*Charles E. Donnelly,* for plaintiff.

*Oliver & Oliver* and *McLaws & Brennan,* for defendants.

BELL, Justice.   The plaintiff sought a decree based on virtual adoption.   A general demurrer to the petition was overruled, and no exception to this ruling was taken.   After introduction of evidence on both sides and instructions by the court, the jury rendered a verdict in favor of the defendants.   A motion for new trial was overruled, and the plaintiff excepted.

The plaintiff is William M. Lubeck, sometimes referred to as "Willie," who is claiming the entire estate of his aunt, Mrs. Valilia Dotson, who died intestate in the year 1937.   The defendants are John T. Dotson, a brother of the intestate, two other named brothers, a sister, and Luther H. Ziegler, whom the other defendants had selected and were seeking to have appointed administrator.   The plaintiff's natural mother was a sister of John T. Dotson and of the other defendants, except Ziegler.   She died many years ago, leaving still other children.   The defendants conceded that the plaintiff was entitled to share in the estate, per stirpes, with the other children, but denied his allegations as to virtual adoption, and contended that he had so neglected his foster mother that in no view of the case was he equitably entitled to recover.   In the motion for a new trial the plaintiff complained of several excerpts from the judge's charge to the jury, and of his refusal to give a requested charge.

The court gave the following charge:   "I charge you, gen-

tlemen of the jury, that the law of Georgia provides for the statutory adoption of children by a proceeding in the superior court that is set out in divers and numerous sections of the Code of Georgia. I charge you though that, besides the statutory adoption laid down by the Code, there may be a virtual or an equitable adoption by a person adopting the child of another, accompanied by virtual adoption and acted upon by all parties concerned through a long period of years, and that it may be enforced in equity upon the death of the obligor with respect to any claim which such child may have against the estate of the obligor, undisposed of by will. There is no will here, gentlemen; so that provision does not apply." This charge was assigned as error on several grounds, but in the brief for the plaintiff the only substantial question argued is whether there was error in the reference to a will. It appears without dispute that the alleged foster mother died intestate; and this being true, the part of the charge referring to a will was inapplicable, as contended. The judge, however, almost in the same breath clearly informed the jury that it *was* inapplicable; and so this ground of the motion is without merit.

The ground of the motion next considered relates to instructions given by the judge in reference to certain habeas-corpus proceedings. Before dealing with this ground some additional facts should be stated. In February, 1909, several years after custody of Willie had been surrendered to the intestate, his father and mother with their other children moved into the home of John T. Dotson, a brother of Mrs. Lubeck, and continued to live there until the death of Mrs. Lubeck in August of the same year. John Lubeck, the plaintiff's father, testified: "August 15, 1909, my wife died, when we were living" at the home of John T. Dotson. After that, "Mrs. Valilia Dotson and John Dotson asked me what I intended to do with the five children. I said I did not know. They said, 'Well, if you will stay away,' Mrs. Valilia Dotson said, 'I will take care of the five children.' She came down there to John Dotson's home and stayed with John, and they took care of the five children. Time went on, and John Dotson and myself did not seem to agree, and I just decided to move my children away." The five children included Willie. It appears from the record that in January, 1910, John Lubeck brought habeas corpus against John T. Dotson to regain custody of all the children. The defendant

answered, among other things, that as to the child Willie custody
had been surrendered by the child's parents to Mrs. Valilia Dotson.
The judgment in that case was that the custody of Willie be awarded
to Mrs. Valilia Dotson, but that custody of all of the other children
be awarded to their father, John Lubeck. In the petition in the
instant case the plaintiff alleged that his foster mother litigated
with his father the question of his custody in such habeas-corpus
proceedings, that the custody was awarded to her, and from then
on until her death "their relations of mother and child were never
disturbed or interrupted in any manner whatsoever." Also, on the
trial of the present case, the plaintiff introduced such proceedings
in evidence. The judge charged the jury as follows: "Now, . .
so that there may be no confusion in your mind in regard to the
habeas-corpus proceedings that have been introduced in this case by
the plaintiff: I charge you that is in no sense an adoption, nor can
it be construed as in any sense confirming or ratifying an adoption,
a contract of adoption, or virtual adoption; that, in a habeas corpus
in this State, the question for determination as a rule in such cases
is where a party is detained illegally; the fundamental thing in
habeas corpus; then, as to a minor child, what is for the best wel-
fare of the infant, and when I say infant I mean any minor; and
the court, under a wide discretion, will take a child and give it to
a perfect stranger, or an institution, or some next of kin, either
close or far, but in no sense does it indicate any adoption." In
the motion for new trial it is contended that this charge was erro-
neous, for several reasons, especially that it prevented the jury from
considering the habeas-corpus proceedings, the conduct of the par-
ties, and the judgment therein, as circumstances tending to show
virtual adoption; and therefore that the charge invaded the province
of the jury, to the prejudice of the defendant.

In the state of the record, the charge was not erroneous for any
reason urged. The habeas-corpus proceedings were instituted solely
against John T. Dotson; and although it appears that the judge
awarded the custody of Willie to Mrs. Valilia Dotson, she was not
named as a party defendant and filed no pleading therein. So far
as appears, the intestate had nothing whatever to do with the case,
except that one of the defendants did testify: "Why Judge Free-
man gave her this boy? Valilia said that the child was hers." The
plaintiff, however, had the full benefit of this *statement* as evidence,

since nothing said in the charge either eliminated or depreciated it. The proceedings themselves did not in any sense constitute a virtual adoption, and the judge properly so instructed the jury. While one of the defendants in the present case, John T. Dotson, was *the* defendant in the habeas-corpus case, it does not appear that he alleged or testified to any fact therein which would tend to show a virtual adoption as now claimed by the plaintiff. As evidence, the proceedings in the habeas-corpus case had no probative value in the plaintiff's favor, although the petition therein tended strongly to impeach the plaintiff's father as a witness in the instant case, and thus constituted evidence in favor of the defendants.

■ The plaintiff complained of the following charge: "The mere statement of an individual that he would take the child and treat it as his own, I charge you, under the law is not a virtual adoption, for the reason, a person may disinherit his own child." This excerpt is assigned as error on several grounds, among which are that it prevented the jury from considering whether "such a statement against the interest by an individual might or might not be an evidentiary fact" on the question of equitable adoption, and "took away from the jury the right to consider such evidence." The testimony of the plaintiff's father, John Lubeck, considered with other evidence, might have authorized a finding that he and his wife surrendered the child to Mrs. Dotson in acceptance of an offer made by her to the effect that if they would give her the child she would adopt him and make him her "heir" when she died. The testimony of Lubeck, however, was rather vague and uncertain on this question. Furthermore, in view of various circumstances shown by the evidence, including the allegations in his application for the writ of habeas corpus to which reference has been made, the jury were authorized to disbelieve his testimony entirely. Several witnesses testified that they had heard Mrs. Dotson on different occasions refer to the plaintiff as her own child, and say that all of her property would go to him at her death. But the evidence further showed that she had made similar statements in reference to other children of Lubeck, stating that her property would go to "the boys" at her death; that is to say, in some of her statements she placed Willie and his brothers in the same class, whereas there was no evidence whatever of any agreement to adopt the others. One of the defendants, a sister of the intestate, testified: "She

treated them all alike, and referred to them as 'my sister's children.'" Another witness testified: "She said they were her sister's children, their father not being able to take care of them;" and that she and her brother John "had to take care of them after the death of her sister." From the evidence as a whole and especially the evidence for the defendants, the jury would have been authorized to find that as a matter of fact Mrs. Dotson merely agreed to take the child Willie and treat him as her own; and if such was the case, the plaintiff was not entitled to recover on basis of a virtual adoption. *Crum* v. *Fendig,* 157 *Ga.* 528 (121 S. E. 825); *Ray* v. *Kinchen,* 166 *Ga.* 788 (144 S. E. 317); *Scott* v. *Scott,* 169 *Ga.* 290 (150 S. E. 154); *Boles* v. *Eddleman,* 189 *Ga.* 551 (2), 553 (6 S. E. 2d, 582). Accordingly, the charge expressed a correct principle of law applicable to the case from the standpoint of the defendants, and was not unfair to the plaintiff. The reason which the judge gave for this conclusion of law, to wit, "that a person may disinherit his own child," may not have been either necessary or logical; but since no will was involved, the charge as a whole did not constitute error of which the plaintiff may complain.

The ground of the motion for a new trial here under consideration does not present an instance of singling out one or more facts or circumstances and charging thereon in such manner as to minimize or destroy their value as parts of a chain of facts and circumstances relied on to establish a cause of action or defense, within the rule applied in *Trustees of Jesse Parker Williams Hospital* v. *Nisbet,* 191 *Ga.* 821 (14 S. E. 2d, 64), and other cases. Cf. *Georgia Railway & Electric Co.* v. *Gatlin,* 142 *Ga.* 293 (5) (82 S. E. 888); *Western & Atlantic Railroad* v. *Gray,* 172 *Ga.* 286 (7) (157 S. E. 482); *Griffin* v. *State,* 34 *Ga. App.* 526 (130 S. E. 368); *Carroll* v. *State,* 43 *Ga. App.* 300 (158 S. E. 605): *Ryan* v. *State,* 46 *Ga. App.* 347 (167 S. E. 720). While it might present an instance of that kind if considered solely from the standpoint of the plaintiff, yet the rights of both sides are to be considered; and from the viewpoint of the defendants the charge dealt with matter which the jury could have found to be the whole truth of the case as related to the agreement made, and which if true would constitute a complete defense. The rule against singling out incidental and subordinate circumstances can have no application where the charge is one to which the opposite party or parties would

be entitled, at least on a timely written request. If the defendants had requested the charge here under consideration, omitting the "reason," we think it would have been error not to give it. Any charge which the judge should give on request may of course be given voluntarily. In this instance the charge may in fact have been requested—the record does not show. It follows that the charge complained of was not erroneous as contended by the movant.

In ground 4 the movant complained of the following charge: "The mother of the child is not competent to contract with another for the adoption of her child, unless it is alleged and shown that the child was illegitimate, or that its father was dead, or that the father had lost parental control, or that the father had abandoned the child, or that the father had acquiesced in the contract made by the mother for the adoption of the child. So that you see, the mother by herself is without legal authority in the premises to contract with any one for a virtual adoption." The complaint is that this charge was erroneous and prejudicial, for the reason that "it indicated the contract of adoption had been made with the mother, whereas the testimony showed a contract with the father only, and thus the court influenced the jury to consider a theory or question which had no bearing whatsoever on the case." While the plaintiff alleged that the agreement was made between both his mother and father on one side and Mrs. Valilia Dotson on the other, and while, as hereinbefore stated, the testimony of the father if believed by the jury might have tended to establish this averment as related to both parents, still, as we have also indicated, the jury were not bound to accept as true any part of the testimony of the plaintiff's father; and there was other evidence which would have authorized a finding that the agreement of Mrs. Dotson, if any, as to adoption was made only with the plaintiff's mother, and under circumstances which rendered the mother incompetent so to contract without concurrence on the part of the father. Under several previous decisions by this court, the charge stated a correct principle of law, and the evidence was such as to make the principle applicable. See *Mock* v. *Neffler*, 145 *Ga.* 25 (95 S. E. 673) ; *Rucker* v. *Moore*, 186 *Ga.* 747 (199 S. E. 106) ; *Boles* v. *Eddleman*, 189 *Ga.* 551 (supra). As to the province of the jury to determine the credibility of the witnesses, see *Penny* v. *Vincent*, 49 *Ga.* 473; *Armstrong* v. *Ballew*, 118 *Ga.* 168 (2), 170 (44 S. E. 996) ; *Louisville & Nashville Rail-*

*road Co.* v. *Trout,* 141 *Ga.* 121 (80 S. E. 622); *Whiddon* v. *Hall,* 155 *Ga.* 570 (6), 578 (118 S. E. 347); *Lewis* v. *Patterson,* 191 *Ga.* 348 (4) (12 S. E. 2d, 593).

In ground 5 movant complained because the court refused a request to charge the jury: "If it develops from the evidence that Mrs. Dotson refused Lubeck the right to visit her, then his failure to do so is not chargeable against him as neglect of his duty." This ground does not show error. Whether or not it would have been improper for the judge to charge the jury at all upon such issue, the charge requested would have tended to invade the province of the jury, because it declared as a matter of law that a certain act on the part of the plaintiff would not have constituted neglect of duty. Questions of diligence and negligence should generally be left to the jury, in the absence of some law declaring that a particular act will constitute negligence. *Macon Railway & Light Co.* v *Vining,* 123 *Ga.* 770 (2) (51 S. E. 719). The question whether the plaintiff's conduct was justified as a matter of fact would depend, not alone on whether Mrs. Dotson refused him the right to visit her home, but also on whether he had given sufficient cause for such refusal by her. The plaintiff testified that she would chastise him when he did something he had no business to do.

Counsel for the plaintiff in his brief discusses the evidence in detail for the purpose of demonstrating that a verdict for the plaintiff was demanded, and that the judge erred in not granting a new trial on the general grounds. After careful consideration of the evidence and the argument relating thereto, we are unable to sustain this contention. The evidence authorized the verdict; and no substantial error of law having been committed during the trial, the court did not err in overruling the motion for new trial on all grounds. *Judgment affirmed. All the Justices concur.*