## 35123. NUNNALLY et al. v. TRUST COMPANY BANK et al.

JORDAN, Justice.

This appeal marks the second appearance of this case in this court. For a resolution of the issues contained in its first appearance and for a more exhaustive statement of facts than will be provided in this opinion, see *Nunnally v. Trust Company Bank,* 243 Ga. 42 (252 SE2d 468) (1979), wherein it was held that a will is to be construed according to the law in effect at the time of the testatrix' death.

Upon remand, the trial court found that Ga. L. 1941, pp. 300, 306, though patently invidious because its exclusive effects were based on biological grounds only, was not constitutionally infirm because those effects in this case were not accomplished through state action. Mrs. McKee's two adopted great-grandsons appeal, contending that the trial court erred because the 1941 adoption statute is an unconstitutional violation of the Equal Protection Clause of the United States Constitution and Art. I, Sec. II, Par. III of the State Constitution and that state action is present in its operation. In addition, appellants seek a declaration from this court, once we have held the 1941 adoption statute unconstitutional, that they are takers under Mrs. McKee's will as members of a class of "children" (or great-grandchildren within the facts of this case) since the public policy of this state is strongly in favor of the equalization of rights between natural and adopted children.

To begin, appellants do not attack the entire 1941 adoption statute. Rather, the offensive portion is as follows: "Section 11. *Final Order of Adoption* . . . If the court is satisfied that a final order of adoption should be entered, the court shall enter a decree of adoption, declaring the said child to be the adopted child of the petitioner [the adopting parent], and capable of inheriting his estate, and also what shall be the name of such child. Thereafter, the relation between such person and the adopted child shall be as to their legal rights and liabilities, the relation of parents and child, except the petitioner or petitioners shall never inherit from the

child. When the final adoption shall have been granted, the [natural] parents of the child shall be divested of all legal rights or obligations from them to the child or from the child to them; and the child shall be free from all obligations of any sort whatsoever to the said natural parents. *To all other persons the adopted child shall stand as if no such act of adoption had been taken."* Ga. L. 1941, pp. 305-306 (Emphasis supplied.)[1]

Case law at the time interpreted this statute to mean that adopted children could only inherit from their adoptive parents and not from any other adoptive relatives. See *Comer v. Comer,* 195 Ga. 79 (23 SE2d 420) (1942) and cits. Moreover, pursuant to the emphasized language in section 11, supra, adopted children were held not to be cut off from natural relatives other than their natural parents. *Alexander v. Lamar,* 188 Ga. 273 (3 SE2d 656) (1939).

As the situation stood in 1945, then, the year of the death of Mrs. McKee, an adopted child could inherit from his or her adoptive parents and from a natural grandparent, aunt, etc., but not through the adoptive line from anyone except the adoptive parents, and not from the natural parents.

Appellants contend that within a class of similarly situated people, children within a family, the state has impermissibly drawn an invidious distinction between

---

[1]That portion of the statute here under attack was amended in 1949 (after the death of the testatrix) to provide that an "adopted child shall be considered in all respects as if it were a child of natural bodily issue of petitioner or petitioners, and shall enjoy every right and privilege of a natural child of petitioner or petitioners; and shall be deemed a natural child of petitioner or petitioners to inherit under the laws of descent and distribution in the absence of a will and to take under the provisions of any instrument of testamentary gift, bequest, devise or legacy unless expressly excluded therefrom." Ga. L. 1949, p. 1157. See also Ga. L. 1977, pp. 201, 219.

children adopted into the family and those born into it.

As the United States Supreme Court has said in withstanding an equal protection challenge to a statute conditioning the rights of illegitimates to inherit from their fathers, "few statutory classifications are entirely free from the criticism that they sometimes produce inequitable results. Our inquiry under the Equal Protection Clause does not focus on the abstract 'fairness' of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment." Lalli v. Lalli, 99 SC 518, 527 (1978). We have said that "[u]nder the equal protection guarantee of our State Constitution . . . classification in legislation is permitted when the classification is based on rational distinctions, and the basis of the classification bears a direct and real relation to the object or purpose of the legislation. [Cits]". *Cannon v. Ga. Farm &c. Ins. Co.*, 240 Ga. 479, 482 (241 SE2d 238) (1978). Therefore, this court's inquiry is limited to identifying the ends the General Assembly intended to be served by Section 11, and insuring that the means chosen are rationally related to the promotion of those state objectives.

One aim of this statute is the state's interest in providing for the orderly disposition of property. Through its laws of intestate succession, the state has established a method of descent based upon the presumed intention of the decedent. Distinctions based on preferences do exist in this area of law. It is presumed, by the state, that a person would wish for his or her property to pass within his or her bloodline, for example, and to children before grandchildren, and so forth. As long as these distinctions are rationally related to the state's interest in seeking the most orderly system possible for passing title to property from one person to another so that the state knows at all times exactly what is owned by whom, then the distinctions are constitutionally sound.

The right of an individual to inherit property through intestate succession is not a natural or inalienable right; rather, it is solely within the province of the state to prescribe for such succession as it deems

necessary. *Pettiford v. Frazier,* 226 Ga. 438 (175 SE2d 549) (1970). The state must make choices. As one commentator has noted: "Intestate succession is older and more basic than succession by will . . . If we are to have inheritance at all we could scarcely get along without rules which dictate what relatives of the decedent shall inherit and in what proportion. There are other possible bases to determine the path of inheritance than those of blood or marriage, such as dependency, age, household connection, friendship, etc. . . These are so indefinite, however, that they would be difficult to apply and would lead to uncertainty and consequent litigation. As a practical matter we are driven to a system of intestate succession based upon consanguinity or affinity to the decedent, even if we might desire some other basis for determining heirship . . ." Atkinson, Wills 32-33 (2d Ed. 1953).

The state has used this concept of inheritance within the bloodline in drawing other valid distinctions. For example, if a person dies intestate survived by children, one of whom has predeceased the decedent, the spouse of that predeceased child is not allowed to take as the legal representative. See *Morris v. First Nat. Bank of Atlanta,* 202 Ga. 51 (42 SE2d 215) (1947). Code Ann. § 113-903 (4). The rationale for excluding a widowed daughter-in-law or son-in-law from the class of takers is very similar to the rationale for excluding adopted grandchildren. The deceased child took an affirmative act in bringing his or her spouse into the immediate family and between husband and wife, as between adopted child and adopting parent, inheritance rights do exist. However, beyond the immediate relationship of husband and wife, in terms of a daughter-in-law or son-in-law taking from the deceased spouse's ancestors, it is as if no such act of marriage ever took place. There is a distinction drawn between daughters-in-law and sons-in-law and natural children, even though proving the identity of a son-in-law, for example, presents no problem because of the ease in referring to the marriage license. However, the state assumes that one would rather have his or her property pass within the bloodline rather than have people with a bare legal relationship to them share. We would consider this assumption a rational means to dispose of property in

an orderly fashion.

The question in this case is not the wisdom of the General Assembly's choosing in 1941 to exclude adopted children from inheriting from only their adoptive parents, and natural relatives other than their natural parents, nor is it the motive of the General Assembly in enacting this statutory scheme. Once again, "[l]egislatures have wide discretion in passing laws that have the inevitable effect of treating some people differently from others, and legislative classifications are valid unless they bear *no rational relationship* to a permissible state objective. [Cits.]" Parham v. Hughes, 99 SC 1742, 1745 (1979). One legislative objective in this case is the orderly disposition of property, and the means by which this is accomplished is presuming that a decedent, not a direct party to the act of adoption, would not intend for his or her property to pass to an adopted child but would rather intend for the property to pass through the bloodline. The sole question is whether this assumption on the part of the state is one rational way to achieve the orderly disposition of property. We conclude that it is.

We have not forgotten that the subject matter of this controversy is a will, and the property passing from this testatrix is not by intestate succession. However, the law of the case directs that Section 11 be used to construe Mrs. McKee's intent in her silence, and that same section is the one used to guide administrators when no will is present, much less a silent one, as to the meaning of "children." See *Nunnally v. Trust Co. Bank,* supra at 43. In using Section 11 to determine testamentary intent, the General Assembly and this court have defined the word "children" to include different classes of people at different levels. Contrary to the finding of the trial court, we conclude that there is state action involved in the operation of this statute. Section 11 dictates a result that would occur each time a will was silent as to the meaning of "children" or intestacy occurred in a family with adopted children. This was not a neutral, nondiscriminatory state law of will construction. This was the state making up the decedent's mind for him.

The statute plays the decisive role in supplying the missing intent of the silent testatrix, "[T]his is true

because the statute fixing our rules of inheritance must be construed in pari materia with our adoption statute. [Cit.]" *Thornton v. Anderson,* 207 Ga. 714, 717 (64 SE2d 186) (1951). Even though state action is involved we do not find an "invidious discrimination" in the statute such as would render it unconstitutional.

We conclude, therefore, that the result reached by the trial court was correct, though we differ with the reasoning contained in its order. Appellants are excluded from the class of trust beneficiaries provided for in Mrs. McKee's will, and the judgment of the trial court is affirmed for the reasons stated herein.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 11, 1979 — DECIDED NOVEMBER 6, 1979 — REHEARING DENIED NOVEMBER 21, 1979.

*Henry L. Bowden, Gary Hill,* for appellants.
*King & Spalding, James M. Sibley, Michael C. Russ, Marceil F. Morrell, Hansell, Post, Brandon & Dorsey, Allen Post, Edward S. Grenwald,* for appellees.