Anna HEIEN et al., Appellants,

v.

W. T. CRABTREE, Adm'r, et al., Appellees.

No. 7203.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 17, 1962.

Rehearing Denied Jan. 14, 1963.

272

Fike & Hunter, Dalhart, for appellants.

E. E. Coons, Texhoma, Will Wilson, Atty. Gen., J. H. Broadhurst, Asst. Atty. Gen., Austin, for appellees.

CHAPMAN, Justice.

This is an appeal from a summary judgment granted W. T. Crabtree, Administrator, of the estate of R. F. Frei, deceased, and the State of Texas, intervenor.

The action was instituted by the heirs of Frank Frei as one group of petitioners and the heirs of Rosa Frei, his wife, as another group of petitioners to determine heirship of R. F. Frei and by whom his estate was to be inherited. Frank Frei and Rosa Frei had plural marriages, the pleadings alleging he had been married once previously and that to said marriage one daughter, Katherine, was born. Her mother predeceased her. Katherine Frei married Herman Heien and the children and grandchildren of that marriage constitute the petitioners alleged to be the heirs of Frank Frei.

Rosa Frei was married twice before marrying Frank Frei. The heirs through a daughter of her second marriage constitute the petitioners alleged to be the only living heirs of Rosa Frei. It is alleged that no children were born of the marriage of Frank Frei to Rosa Frei.

The pleadings alleged R. F. Frei, a bachelor, died intestate without leaving issue and that the petitioners were entitled to all his estate by inheritance from and through his adoptive parents on the theory of adoption by estoppel.

The various pleadings by petitioners also alleged that R. F. Frei was born out of lawful wedlock and that when he was about two years of age his mother entered into an agreement with Frank Frei and Rosa Frei of Olathe, Kansas, in about the year 1886 at Kansas City, Missouri, by which she agreed to release all her rights to the child to the Freis and they agreed to take the child and adopt him, to give him their name and to treat him as their own natural child. They allege they fed, clothed, and educated him; that he stayed in their home until he was 21 years of age; that they held him out to their friends as their son and adopted son; that he called them "Papa" and "Mama"; that they treated him as their son, lavishing affection upon him and instructing him as to proper conduct and properly training him as a mother and father would train and instruct their own natural child.

They also alleged that R. F. Frei at all times treated the said Frank Frei and Rosa Frei as his parents, lavishing affection upon them, obeying them, and doing such work and serving as a child ordinarily renders and performs for its father and mother around its home.

It is patent from the pleadings that appellants have diligently and carefully sought to bring their case within the area of facts that has been recognized by our Supreme Court as constituting adoption by estoppel, or equitable adoption, to protect

the child and its heirs where the adoptive parents promised to adopt a child and then did not perform the statutory requirements necessary thereto. The doctrine was set forth by our Supreme Court in Cubley et al. v. Barbee et al., 123 Tex. 411, 73 S.W. 2d 72. Appellants contend that the rule should operate conversely where the heirs of the adoptive parents seek to recover the estate of the alleged adopted child dying intestate without issue, as in the instant case. We find no authoritative case law in Texas nor any textual statements that substantiate such contention.

In Moorman v. Hunnicutt et al., Tex.Civ. App., 325 S.W.2d 941 the heirs of the alleged adoptive parents attempted to establish heirship with the alleged adopted child. The majority opinion of the Austin Court of Civil Appeals held there was not any evidence to support an adoption. In two obiter dicta statements that opinion is not clear as to whether the majority considered the heirs of the alleged adoptive parents could or could not. inherit through the alleged adopted child. Helen Mar Hunnicutt was the alleged adopted child. At one place that opinion said, in referring to the question of adoption by estoppel: "Appellees say these estoppels apply to Helen Mar and her heirs. We agree if such estoppels are shown to exist." However, a few paragraphs later that opinion, if we interpret the statement correctly, indicated a belief that the converse of the adoption by estoppel recognized in Texas [1] does not apply wherein it said:

"It is to be noticed that here the parties are undertaking to inherit property from Hicklin P. and Bertha Hunnicutt by establishing the status of Helen Mar as their adopted daughter. This is in effect the reverse of the true principle of estoppel. 'Estoppel can never be invoked to establish facts, but may only be used to prevent parties from relying upon facts which do exist.'

"Quoted from McLemore v. Charleston & Memphis R. Co., 111 Tenn. 639, 69 S.W. 338, in Massachusetts Bonding & Insurance Co. v. Dallas Steam Laundry & Dye Works, Tex.Civ.App., 85 S.W.2d 937, 940, Er. ref. As has often been said estoppel does not in itself give a cause of action but it is a shield and not a sword."

Judge Hughes of that court, in a concurring opinion, then agreed with the result but said that the collateral heirs of adoptive parents can claim through the intestate adopted child only if such child is "legally adopted", meaning in accordance with the statutory procedure provided in the particular state under which adoption is asserted, thus following the Missouri rule.[2]

Obviously then, there is not any guide for us in the Moorman case as to the thinking of the Supreme Court of this state on the subject. The most they could have done in considering a writ in the case was to refuse it NRE. This they did, so with the two opinions in the case there is not any precedent whatever for us to follow in Texas from that case as it applies to our problem in the instant case. Therefore, our case is one of first impression.

Since adoption was not known to the common law,[3] we believe it is well to give some history of the evolution of the doctrine of adoption by estoppel in Texas in order to see the reasoning employed by the Supreme Court of this state to justify the erection of the principle, that we may determine if it is applicable to the theory urged by these appellants.

1. Cubley v. Barbee, supra; Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906. 142 A.L.R. 77; Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972.

2. Rumans v. Lighthizer, 363 Mo. 125, 249 S.W.2d 397 (Sup.Ct. of Missouri).

3. Eckford v. Knox, 67 Tex. 200, 2 S.W. 372 (1886); State ex rel. Walton v. Yturria, 109 Tex. 220, 204 S.W. 315, L.R.A.1918F, 1079 (1918).

Where a contract for adoption is between natural parents of a minor child and a person deciding to adopt the child, the former agreeing to release custody, control, and the right of the services of the child in return for the promise of the latter to leave property to the child by will or by intestate succession, our Supreme Court in 1921 said that such contract is "void as a matter of public policy" because "[a] parent has no property interest in his child and should not be permitted to deal with his child as property." The court further said "The custody of a child is not a subject matter of contract and therefore can constitute no consideration for a contract." [4]

In 1934 our Supreme Court, after citing and quoting from the opinions in cases from other states in which the remedy was characterized as specific performance of a contract to adopt, then said " * * * [W]e are of the opinion that the real classification of the remedy is that of estoppel. * * * However, the technical classification here is of no consequence. The defendants in error are plainly estopped from asserting the invalidity of the deed of adoption * * *." [5] Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72, 83.

A reading of the case just cited showed the child was a musical prodigy; that her adoptive mother toured a large part of the United States with her, visiting New York City alone 45 different times as a musical artist; that her earnings were substantial; and that except for her support she never received any of the money earned thereby. The court then held under such circumstances that the defendants in error were estopped from asserting that a deed of adoption testified about was not filed as required by statute and that to permit them

to do so would be a fraud upon the rights of the adopted child.

In 1940 our Supreme Court in another landmark case, where there had been an oral contract to adopt between the natural parent of a three year old girl and the adoptive parents, which child lived in the adoptive parent's home thereafter until she was married and was held out to the public as their child, extended the doctrine still further.[6] From that case we think the following rules of law may be said to apply.

1. The Supreme Court in Cubley v. Barbee, supra, held estoppel in pais was the applicable estoppel rule by applying the adoption by estoppel doctrine to preclude adoptive parents and their privies from asserting the invalidity of adoption proceedings to situations such as the facts there disclosed.[7]

2. Estoppel in pais is the applicable estoppel rule to invoke the adoption by estoppel doctrine to fact situations such as existed in Jones v. Guy.

3. Estoppel in pais is the estoppel rule that would be applicable to our case, if any, because of the very close similarity of the facts in Jones v. Guy with the facts pleaded in our case except as to the source of the two claims.

4. The doctrine of equity upon which decisions of equitable adoption rest are based upon the adoptive parent having received the benefits of the parent-child relationship fully performed by the child.

5. Where the statutory procedure for adoption is followed, the result accruing is that of a legal adoption as distinguished from equitable adoption.

4.  Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Adoption "By Estoppel" by Edward W. Bailey, 36 Texas Law Review, Vol. 1, beginning page 31.

5.  The deed of adoption required by the statute then in effect had been executed but not recorded as required by statute.

6.  Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77.

7.  We do not believe the Cubley v. Barbee case was completely clear as to the estoppel rule applicable and in the Jones v. Guy case it was clarified.

The last expression by the Supreme Court of this state to which we have been cited on the subject of adoption by estoppel or have been able to find is Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972. In that case the court through Judge Calvert held:

> "Under the statutes and the cases referred to it was incumbent upon respondent to plead and prove according to recognized rules of law and evidence that: (1) George Ann Barrow executed, acknowledged and filed a statutory instrument of adoption in the office of the County Clerk; or (2) George Ann Barrow undertook to effect a statutory adoption but failed to do so because of some defect in the instrument of adoption or in its execution or acknowledgement, or because of failure to record it; or (3) George Ann Barrow agreed with respondent, or with respondent's parents or with some other person in loco parentis that she would adopt respondent. The effort to comply with the statute in the second instance and the agreement to adopt in the third instance are a necessary predicate for the interposition of the equity powers of the courts to decree an adoption by estoppel in favor of one who, acting under and by virtue of such defective proceeding or such agreement, confers, affection and benefits upon the other.
>
> "In no case has this Court upheld the adoptive status of a child in the absence of proof of an agreement or contract to adopt."

There is not any admissible proof of such facts in this case, as we shall now demonstrate.

■ In an effort to establish a right of inheritance by the heirs of the adoptive parents through the adopted son, appellants pleaded the facts heretofore related. Even if it should be admitted, arguendo, that they allege a cause of action that still did not preclude the granting of a summary judgment unless showings are made by depositions, admissions, affidavits, or like proofs—one, some, or all. Schmidt v. Kuper, Tex.Civ.App., 324 S.W.2d 307 and authorities there cited under Syl. [1–2] (affirmed by Sup.Ct.).

The pleadings alleging the background relationship by the alleged adopted child and the alleged adoptive parents were sworn to by a number of the appellants by affirmations that said " * * * *In so far as is known to such petitioner,* all the allegations of such petition are true in substance and in fact * * *" Nowhere is there a showing as to what was known by any of the affiants except an affidavit made by Caroline Schwarz Morrison. Therefore, the pleadings alone would not be sufficient to preclude the granting of summary judgment. As we stated in Schmidt v. Kuper " * * * [T]he better reasoned cases decide that mere pleadings do not show that there is a genuine issue of fact, and thus prevent summary judgment * * *." (All emphases herein are ours.)

■ One of the attorneys of record also swore to pleadings in which the background agreement and relationship between R. F. Frei's mother and Frank Frei and Rosa Frei were alleged. It is obvious that this attorney could not know those facts of his own knowledge and that what he swore to would be hearsay and not admissible in evidence. Consequently, none of the pleadings would themselves preclude summary judgment. Our Supreme Court in Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 399 has said:

> "The summary judgment rule, Rule 166–A, Texas Rules of Civil Procedure, provides that affidavits must be made by competent affiants with personal knowledge of the statements in them, which statements must be so worded that if given on the witness stand they would be admissible as evidence."

Therefore, even though such pleadings should be given the dignity of sworn state-

ments or affidavits they still would not preclude the granting of a summary judgment since the affiants only say the pleadings are true "insofar as is known to such petitioner" without anywhere showing what they know.

■■ There is not any deposition in the case and only the affidavit above mentioned of Caroline Schwarz Morrison. Though that affidavit states she has "personal knowledge of every statement herein made and fully confident [perhaps meaning competent] to testify to the matters stated herein", a reading of the affidavit makes it obvious that the statements are not so worded that if given on the witness stand they would be admissible in evidence. The statement in the affidavit that after the death of Frank Frei his estate was divided between Rosa Frei, Katherine Frei Heien, and R. F. Frei, with the latter receiving a child's share is a conclusion of law. The statement of the same import to the effect that R. F. Frei received from the estate of Frank Frei the share that would have been accorded to him had he been a natural child is also a conclusion of law. The statement that R. F. Frei was given certain funds by Frank Frei when he left home, which he invested in property in Texas that led to the estate he left, would certainly not be admissible in evidence as worded and without showing as to how she could possibly have such knowledge except by hearsay. Tobin v. Garcia, supra; Lawyers Surety Corporation v. Sevier, Tex.Civ.App., 342 S.W.2d 604, 608 (NWH); Farmers State Bank v. First State Bank of Liberty et al., Tex. Civ.App., 317 S.W.2d 768 (NWH). The probate proceedings introduced into evidence upon Frank Frei's estate show he named his surviving wife, Rosa Frei, and his only daughter, Katherine, in his will and that R. F. Frei was not even mentioned.

■ We believe what we have said is decisive of this case but there are other good reasons why we believe the judgment of the trial court was correct. Our Supreme Court in Liberty State Bank v. Guardian Savings & Loan Ass'n, 127 Tex. 311, 94 S.W.2d 133, has held:

"The principle of estoppel in pais may be invoked against a party only when he has failed to do that which it was his duty to do. *He cannot be estopped because of his failure to do that which he owed no duty to do.*"

R. F. Frei owed no duty to execute documents of adoption. Any duty in that regard was upon Frank Frei and Rosa Frei. Therefore, no estoppel can arise in their favor, or in favor of those claiming under them.

Since there is no reliable authority in Texas holding that the adoptive parents and those claiming under them may inherit through the adopted child and since the reasoning applied by our Supreme Court to justify the erection of the principle announced in the Cubley case and other Supreme Court cases following it heretofore cited would not be applicable to our facts, we feel some obligation to follow the authority of other jurisdictions. We prefer the reasoning of the Supreme Court of Missouri as announced in Rumans v. Lighthizer, supra, wherein it said:

"An equitable adoption functions to enforce the rights of the child under the agreement to adopt. The child is not chargeable with the adoptive parent's failure to record the deed, *and the enforcement in equity of the agreement to adopt should not confer additional rights upon the adoptive parent. The right of inheritance from the child is a different right from that of the child to enforce the agreement to adopt.* That a legal or statutory adoption, binding on all persons in accord with the statutory provisions, differs from an equitable adoption, which is based upon contract for the protection of the child and binding on the parties or those in privity with them, is the effect of Menees v. Cowgill, 359 Mo. 697, 223 S.W.2d 412, 418,

a case reaching this court upon transfer from the Kansas City Court of Appeals, Mo.App., 214 S.W.2d 561, 571."

We concur with the statement of Judge Hughes in Moorman wherein he said "* * * if the Missouri case is right, and I believe it is, the fact that an adoption by estoppel is shown * * * is not sufficient to confer upon * * * adoptive parents or their kin the right to inherit * * *."

For all the reasons above stated we hold appellants failed to establish a cause of action and that the summary judgment was correctly granted.