Anna HEIEN et al., Petitioners,

v.

W. T. CRABTREE, Administrator, et al.,
Respondents.

No. A–9469.

Supreme Court of Texas.

May 22, 1963.

Rehearing Denied July 10, 1963.

Fike & Hunter, Dalhart, for petitioners.

E. E. Coons, County Atty., Stratford, Waggoner Carr, Atty. Gen., Austin, J. H. Broadhurst, Asst. Atty. Gen., for respondents.

CALVERT, Chief Justice.

Petitioners, as plaintiffs, sought by suit in the county court of Sherman County to establish that they were the heirs at law of R. F. Frei, deceased, and that as such they were the owners of certain real and personal property constituting his estate. The county court denied the relief sought. Appeal was perfected to the district court. In that court respondents filed a motion for summary judgment, principally on the ground "that if all of allegations of petitioners' pleadings on file herein were admitted to be true, petitioners would not be

entitled to any relief prayed for by them and that respondents are entitled to judgment as a matter of law." The motion was granted, and judgment was rendered that petitioners take nothing. The Court of Civil Appeals affirmed. 364 S.W.2d 271. We affirm the judgment of the Court of Civil Appeals.

■ The question squarely presented is whether a legal status of parent and child is created by parties assuming and living in a relationship of parent and child pursuant to an unperformed agreement to adopt the child. We hold that it is not.

Petitioners are alleged to be all of the heirs at law of Frank and Rosa Frei, husband and wife, both of whom predeceased R. F. Frei. Their other allegations may be summarized as follows: that R. F. Frei, born out of wedlock, was delivered by his mother, when yet quite young, to Frank and Rosa Frei about the year 1886 under an agreement that they would legally adopt him; that R. F. was given the name of Frei and remained in the home of Frank and Rosa until he was twenty-two years of age; that during a period of approximately twenty years the parties lived in a relationship in all respects consistent with that of parent and child, discharging the duties and obligations and receiving the benefits of the relationship as fully as if R. F. had been a natural child of Frank and Rosa. There is no allegation that R. F. was formally adopted according to statutory procedures; to the contrary, it is alleged that there was an equitable adoption or adoption by estoppel.

R. F. Frei never married, and died intestate. If the facts alleged and assumed to be true create a legal status of parents and child between Frank and Rosa Frei and R. F. Frei, the provisions of § 3(b) and § 40 of the Probate Code, Vernon's Texas Civil Statutes, might have important bearing on petitioners' rights of intestate succession. The pertinent provisions of those sections read as follows:

"§ 3. Definitions and Use of Terms

"When used in this Code, unless otherwise apparent from the context:

"(a) * * *

"(b) 'Child' includes an adopted child, whether adopted by any existing or former statutory procedure, or by acts of estoppel * *."

"§ 40. Inheritance By and From an Adopted Child

"For purposes of inheritance under the laws of descent and distribution, an adopted child shall be regarded as the child of the parent or parents by adoption, such adopted child and its descendants inheriting from and through the parent or parents by adoption and their kin the same as if such child were the natural legitimate child of such parent or parents by adoption, and such parent or parents by adoption and their kin inheriting from and through such adopted child the same as if such child were the natural legitimate child of such parent or parents by adoption. The natural parent or parents of such child and their kin shall not inherit from or through said child, but said child shall inherit from and through its natural parent or parents. Nothing herein shall prevent any parent by adoption from disposing of his property by will according to law. The presence of this Section specifically relating to the rights of adopted children shall in no way diminish the rights of such children, under the laws of descent and distribution or otherwise, which they acquired by virtue of their inclusion in the definition of 'child' which is contained in this Code."

The inclusion of the quoted language in section 3(b) of the Probate Code, adopted in 1955, is the first legislative recognition

in this state of "equitable adoption". The language used indicates a legislative assumption that our courts had held that a child may be adopted by acts of estoppel, and thus that a legal status of parent and child is created by acts of estoppel. Not so.

Before the enactment of Art. 46a, Vernon's Texas Civil Statutes, in 1931, adoptions were effected in this state by the execution, authentication or acknowledgment and recording by the adopting parent or parents of a written instrument of adoption. In a series of cases arising out of fact situations having their inception prior to 1931 this Court recognized and affirmed a right of intestate succession in children who, being neither natural nor legally adopted children of the intestate, were held to be entitled to the right by "equitable adoption" or "adoption by estoppel." The cases grew out of efforts to adopt which were ineffective because of failure to comply strictly with statutory procedures, or of agreements to adopt which by neglect or design were not performed. See Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72; Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77; Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972. For an analysis of these and other cases dealing with the problem, see 36 Texas Law Review 30. The descriptive phrases, "equitable adoption," "adoption by estoppel," and "adoptive status," are used in decided cases strictly as a shorthand method of saying that because of the promises, acts and conduct of an intestate deceased, those claiming under and through him are estopped to assert that a child was not legally adopted or did not occupy the status of an adopted child. Jones v. Guy, supra. Analysis of the cited cases makes clear that we did not intend to hold, and did not hold, that "equitable adoption" or "adoption by estoppel" is the same as legal adoption or that it has all of the legal consequences of a statutory adoption.

In the cited cases the right of intestate succession was asserted by the child. If that were the situation in this case, the facts alleged by petitioners, if found to be true, would undoubtedly support a holding that those claiming as heirs of Frank and Rosa Frei were estopped to assert that R. F. Frei was not an adopted child or did not occupy the status of an adopted child. But that is not the situation in this case. Here, the heirs of Frank and Rosa Frei are asserting a right of intestate succession to the estate of R. F. Frei. It was their burden to allege a legal right of succession. They could discharge that burden by alleging and proving that R. F. Frei was either a natural child or an adopted child of Frank and Rosa Frei through whom they claim. Admittedly he was neither.

But petitioners contend that the doctrine of estoppel in pais should be applied both ways; that inasmuch as they would be estopped to assert that R. F. Frei was not an adopted child if he had survived Frank and Rosa and had sought to establish a right of inheritance to their estates, the administrator of his estate should be estopped to assert that he was not an adopted child when they, as heirs of Frank and Rosa, seek to establish a right of inheritance to his estate. They assert that on this theory they have alleged a right of succession. How can that be? Petitioners' rights can be no better or higher than the rights of those through whom they claim. If Frank and Rosa had survived R. F. and were seeking to establish a right of succession to his estate, they would not be heard to claim the aid of equity. Through neglect or design they breached their agreement to adopt. More than that, there would be no basis in promises, acts or conduct on the part of R. F. upon which to erect an estoppel. Neither he nor his mother breached a duty to Frank and Rosa or in any way misled them to their detriment.

Petitioners rely upon Alexander v. Lamar, 188 Ga. 273, 3 S.E.2d 656, 123 A.L.R. 1032, and Grand Lodge of Order of Sons of Herman v. Prater, Tex.Civ.App., 2 S.W.2d

500, no writ history. Both cases may be distinguished.

In Alexander v. Lamar, a mother who had surrendered custody of her son to another pursuant to an agreement that it would be adopted, sought to establish a right to an interest in property of the adoptive parent by inheritance through her deceased son. There had been no legal adoption. The Supreme Court of Georgia held on the facts alleged that the agreement to adopt was subject to specific performance, that equity would regard that as done which should be done, that the adoption would be regarded as legally consummated, and that the statutes of the state, properly interpreted, terminated the right of a natural mother to inherit from or through her child once adoption by another was consummated. Aside from the other obvious factual distinctions between Alexander v. Lamar and the instant case, this Court in Cubley v. Barbee, supra, indirectly rejected the specific performance theory of establishing an adoptive status of a child not legally adopted and rested its right to intestate succession on estoppel in pais. That holding was deliberately accepted as the proper theory in Jones v. Guy, supra, and Cavanaugh v. Davis, supra.

Grand Lodge of Order of Sons of Herman v. Prater, supra, was a suit by Emma Prater to recover the proceeds of a fraternal benefit certificate issued to and on the life of Albert Kohl in which Emma was the designated beneficiary and was stated to be the adopted daughter of the insured. Grand Lodge defended the suit on the ground that Emma was not legally adopted and that she had no insurable interest in the life of Kohl. The Court of Civil Appeals affirmed a recovery by Emma on two grounds: first, that the evidence would support a finding that Emma was the adopted daughter of Kohl, and second, that proof of insurable interest was not essential to recovery of insurance proceeds by a designated beneficiary. All of the cases cited by the court are cases supporting its second

ground for affirming recovery. For that and other reasons, the first ground for affirmance is of no authoritative significance and may be disregarded.

The question before us is one of first impression in this state. The Court of Civil Appeals decided it correctly. The reasoning by which our conclusion has been reached is supported by the reasoning of the Supreme Court of Missouri in Rumans v. Lighthizer, 363 Mo. 125, 249 S.W.2d 397, 401, where, in answering an argument similar to that presented by petitioners in this case the court said:

"An equitable adoption functions to enforce the rights of the child under the agreement to adopt. The child is not chargeable with the adoptive parent's failure to record the deed, and the enforcement in equity of the agreement to adopt should not confer additional rights upon the adoptive parent. The right of inheritance from the child is a different right from that of the child to enforce the agreement to adopt. That a legal or statutory adoption, binding on all persons in accord with the statutory provisions, differs from an equitable adoption, which is based upon contract for the protection of the child and binding on the parties or those in privity with them, is the effect of Menees v. Cowgill, 359 Mo. 697, 223 S.W.2d 412, 418 * * *."

The same reasoning is basic to the concurring opinion of Associate Justice Hughes in Moorman v. Hunnicutt, Tex.Civ.App., 325 S.W.2d 941, 942, writ refused, N.R.E.

Respondents' motion for summary judgment on the pleadings was properly granted. 30 Texas Law Review 285, 297; Schroeder v. Texas and Pacific Ry. Co., Tex.Civ. App., 243 S.W.2d 261, no writ history. The judgment of the Court of Civil Appeals is affirmed.

GREENHILL and SMITH, JJ., dissenting.

GREENHILL, Justice (dissenting).

The particular question in this case is whether the property of R. F. Frei may be inherited by those claiming to be his heirs or whether his property must go to the State of Texas by escheat. The Court has held that the property goes by escheat to the State.

Reduced to its simplest form, the question is this: assuming (as the majority opinion does) that the facts are that there has been an adoption by estoppel so that the child would inherit from the adoptive parents, may the adoptive parents also inherit from the child? The majority has held not; and if the child dies intestate possessed of property (even property given him by his adoptive parents), the property may not be inherited by the adoptive parents; and, under facts like those in this case, the property of the child escheats to the State. With this I cannot agree.

Of course, whether property may be inherited or not depends upon the statutes of descent and distribution. These are now contained in our Probate Code. Section 3(b) of this Code[1] defines "child" as follows:

"'Child' includes an adopted child, whether adopted by any existing statutory procedure *or by acts of estoppel* * * *."

The Code then continues (with matter in brackets being added here):

"§ 40. Inheritance *By and From* an Adopted Child

"For purposes of inheritance under the laws of descent and distribution, an adopted child shall be regarded as the child of the parent or parents by adoption, *such adopted child* [which under Section 3, above, includes children adopted by acts of estoppel] * * * inheriting from and through the parent or parents by adoption and their kin the same as if such child were the natural legitimate child of such parent * * *, *and such parent or parents by adoption and their kin inheriting from and through such adopted child* * * *. The presence of this Section specifically relating to the rights of adopted children shall in no way diminish the rights of such children * * *which they acquire by virtue of their inclusion in the definition of 'child' which is contained in this Code.*"

Thus Section 40 specifically refers to the definition of "child" contained in Section 3; and Section 3 includes adoption "by acts of estoppel." Section 40 then plainly states that such adopted child [including those adopted by acts of estoppel] shall inherit through their adoptive parent, *and such adoptive parents and their kin shall inherit from and through the adopted child* as defined in Section 3.

Therefore, whatever the law was before the adoption of the Probate Code, it is clear that the Legislature has provided an adoptive status whereby there shall be inheritance *by* the child, and *from* the child, rather than an escheat of the property to the State as we have here.

This legislation, to me, recognizes an adoptive status: once the acts of estoppel have occurred and matured, a status has been created. The Legislature has recognized this status and has provided for inheritance, both ways, under it.

The majority of the Court simply rejects this status. It treats adoption by estoppel as a sort of continuing contract enforceable only on one side. And thus, in my opinion, the Court has simply refused to recognize and carry out the plain provisions of the statute.

I would reverse the judgments below and remand the case for a trial on the merits.

SMITH, J., joins in this dissent.

1. All references herein are to Vernon's Annotated Texas Civil Statutes. Emphasis is mine.