02-10-243-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00243-CV

 

 


 
 
 Pamela Kay Carpenter and Jeffrey Scott Carpenter
 
 
  
 
 
 APPELLANTS
 AND APPELLEES
 
 
 
 
  
 V.
  
 
 
 
 
 Robert Joseph Carpenter, David Trent Deaton, James
 Earl Ward, Edmond Wayne Carpenter, Frankie Marie Carpenter Perry, Michael D.
 Harris, Edmond Powell Carpenter, Jo Beth Ross, Laverne Ward Willmond, Gary
 Don Carpenter, Sammy Harris, Gary Don Mosley, AND DONALD HOWARD MALLORY
 
 
  
 
 
 APPELLEES
 AND APPELLANTS
 
 


 

----------

FROM Probate
Court No. 1 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Pamela
Kay Carpenter (Pam) and Jeffrey Scott Carpenter (Scott) appeal the trial
court’s judgment ordering that they take nothing on their claim to a share of
the assets of an inter vivos trust.  On cross-appeal, Robert Joseph Carpenter,
David Trent Deaton, James Earl Ward, Edmond Wayne Carpenter, Frankie Marie
Carpenter Perry, Michael D. Harris, Edmond Powell Carpenter, Jo Beth Ross,
Laverne Ward Willmond, Gary Don Carpenter, Sammy Harris, Gary Don Mosley, and
Donald Howard Mallory (collectively, Robert) appeal from the trial court’s
judgment awarding Pam and Scott attorney’s fees.  Because we hold that the
trial court did not err by granting summary judgment for Robert and by denying
summary judgment for Pam and Scott, and because we hold that the trial court
did not abuse its discretion by awarding attorney’s fees to Pam and Scott, we
affirm.

Background

On
August 7, 1970, Maggie Spain executed a trust agreement which created the
Maggie Spain Trust No. One, an irrevocable inter vivos trust.  The net income
from the trust was to be divided into two equal halves, one half benefitting
Jim McKinnon (Maggie’s brother-in-law) and the other half benefitting J.M.
McKinnon (Maggie’s nephew).  Upon the death of the survivor of Jim and J.M.,
the remaining corpus and any undistributed income were to be distributed to
seven beneficiaries who were named in the trust agreement.  If any of these
seven beneficiaries had not survived the termination of the trust, then that person’s
share would vest in that person’s descendants.  If the deceased beneficiary had
no descendants, then that person’s share would vest in the remaining beneficiaries
or their descendants.

J.M.,
who had survived Jim, died on November 24, 2006, at which point the trust
terminated by its terms.  At that time, only one of the seven named
beneficiaries (Appellee Jo Beth Ross) was still alive.  Chase Bank, as
substitute trustee, was therefore required to determine the identity of any
descendants of the six deceased beneficiaries.

On
July 2, 2007, Chase Bank filed a declaratory judgment action against Pam,
Scott, Robert, and the unknown descendants of the deceased beneficiaries.  In
its petition, Chase Bank stated that one of the seven named beneficiaries, Jess
Carpenter, was deceased, and that his son Charles Carpenter was also deceased.  Chase
Bank stated that Charles had two step-children, Pam and Scott, whom Charles
sometimes referred to as his “children,” although, to the best of Chase Bank’s
knowledge, Charles had never formally adopted them.  Chase Bank sought a
declaration regarding (1) the identities of the descendants of the six deceased
beneficiaries; (2) whether Pam and Scott are descendants of Jess; and (3) the
proper percentage share to be distributed to each beneficiary.  Pam and Scott
filed an answer asserting that they were entitled to be designated as Jess’s
descendants because Charles had adopted them “by estoppel and equitable
estoppel.”

Chase
Bank filed a motion for summary judgment in which it identified certain
individuals as “undisputed beneficiaries” of the trust, including Robert.  In
its motion, Chase Bank identified Pam and Scott as “disputed beneficiaries” and
asserted that Charles had died in 1983, that Charles had no natural children,
and that Charles had never formally adopted Pam or Scott but had sometimes
referred to them as his children, including in his will.  Chase Bank asked the
trial court to make a declaration as to whether or not Pam and Scott were
Jess’s descendants.  Robert filed a cross-action for a declaratory judgment
that Pam and Scott were not descendants of Jess and therefore were not entitled
to any trust assets.

The
trial court granted partial summary judgment for Chase Bank, declaring the
identities and percentage shares as to the undisputed beneficiaries.  This
order left open the determination of whether Pam and Scott were descendants of
Jess and made no determination as to who was entitled to receive his share of
the trust assets.

Robert
filed an amended cross-action and a traditional motion for summary judgment,
asserting that the doctrine of adoption by estoppel did not apply; that,
because Charles had died in 1983, the statute of limitations barred Pam and
Scott’s claim; and that Pam and Scott could not prove adoption by estoppel
because their mother had refused to consent to any such adoption.

Pam
and Scott filed an answer to Robert’s cross-action, asserting the discovery
rule.  They claimed that the facts and allegations giving rise to their assertion
of their rights as Charles’s equitably adopted children were not known and
could not have been known to them prior to Chase Bank’s initiation of the
lawsuit.

Additionally,
Pam and Scott filed a no-evidence motion for summary judgment, asserting that
Robert had no evidence that their claim was barred by the statute of
limitations.  They also filed a traditional summary judgment motion, asserting
that they were equitably adopted by Charles and were therefore Jess’s descendants
and entitled to his share of the trust assets.

After
a hearing, the trial court denied the motions for summary judgment.  But the
trial court later sent a letter to the parties stating that the court had
reconsidered and was granting Robert’s motion for summary judgment.  The trial
court then held a bench trial on the question of attorney’s fees.  Pam and
Scott’s attorney testified that his reasonable and necessary fees were $69,775
and that he had incurred expenses of $3,536.  He testified that if the case
were appealed, $15,000 would be a reasonable and necessary fee for the appeal,
plus another $15,000 if the case were appealed to the Texas Supreme Court.

The
trial court signed a partial summary judgment for Robert, stating that the
court “finds that the doctrine of adoption by estoppel is unavailable to [Pam
and Scott] to establish that they are entitled to take as ‘descendants’ of
Charles.”  The trial court therefore ordered that Pam and Scott were not
descendants of Jess for purposes of the trust.  A few weeks later, the trial
court entered a final judgment finding that Pam and Scott had been properly
joined in the declaratory judgment action by the trustee and that an award of
attorney’s fees to them was equitable and just.  The trial court awarded Pam
and Scott $69,775 in attorney’s fees, $697.15 in deposition costs, and $7 in court
costs.  Pam and Scott appealed, and Robert filed a cross-appeal.

Pam
and Scott’s Appeal

In
their first issue, Pam and Scott argue that the trial court erred by granting Robert’s
motion for summary judgment.  In their second issue, they argue that the trial
court erred by denying their motion for summary judgment because they proved
adoption by estoppel and because the statute of limitations did not bar their
claim.

In a
summary judgment case, the issue on appeal is whether the movant met the
summary judgment burden by establishing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law.[2]
 We review a summary judgment de novo, taking as true all evidence favorable to
the nonmovant and indulging every reasonable inference and resolving any doubts
in the nonmovant’s favor.[3]  We consider the evidence
presented in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could and disregarding evidence
contrary to the nonmovant unless reasonable jurors could not.[4]
 We must consider whether reasonable and fair-minded jurors could differ in
their conclusions in light of all of the evidence presented.[5]
 When both parties move for summary judgment and the trial court grants one
motion and denies the other, the reviewing court should review both parties’
summary judgment evidence and determine all questions presented.[6]
 The reviewing court should render the judgment that the trial court should
have rendered.[7]

To
determine whether Pam and Scott are entitled to a share of the trust assets, we
must look to the trust instrument itself and the law in effect at the time the
trust became effective.[8]  We construe a trust
instrument in the same manner as a contract.[9]  We construe the trust to
ascertain the intent of the maker, as determined from the language used within
the four corners of the instrument.[10] We must harmonize all of
the instrument’s terms to properly give effect to all parts so that none are
rendered meaningless.[11]

The
trust stated that upon dissolution, its assets would be distributed to the
seven beneficiaries named in the trust, or, if any of those people were
deceased, “the descendants of such deceased [beneficiaries], per stirpes.”  The
question here is what the term “descendants” means.[12] 
The term “descendant” means “‘one who follows in lineage, in direct (not
collateral) descent from a person.’”[13]  The term includes children
and grandchildren.[14]  Thus, if Pam and Scott are,
under the law, Jess’s grandchildren, then they are his descendants, and under
the terms of the trust, they are entitled to Jess’s share.

No
one contends that Pam and Scott were legally adopted.  But Pam and Scott
contend that they are Jess’s grandchildren by application of the doctrine of
equitable adoption, also known as adoption by estoppel.

The Supreme
Court of Texas first began applying what became known as equitable adoption
when it held that if the parties in good faith executed and acknowledged an
instrument of adoption but failed to record the instrument, and the parties to
the adoption “lived in a relationship wholly consistent with that of parent and
child,” then “those claiming under the adoptive parents were estopped to deny
the validity of the instrument of adoption and its recordation.”[15] 
The court also applied the doctrine in cases when no instrument of adoption had
been executed but the adoptive parent had received from the child the benefits
of the adoption and the child had provided those benefits under the belief that
the child had been adopted.[16]  Historically, a person
who had been adopted in accordance with the statutory requirements could
inherit from an adoptive parent, but that person could not inherit through
an adoptive parent.[17]  Thus, under the prior
law, neither a person whose adoption was upheld on estoppel grounds nor a
person adopted through the statutory adoption procedure could inherit from a
stranger to the adoption (that is, someone other than his or her adoptive
parents).[18]

When
the trust in this case became effective, however, the legislature had changed
the law so that legally adopted children stand in the same position as biological
children.[19]  Accordingly, legally adopted
children can inherit through their adoptive parents.[20]
 Thus, if Pam and Scott had been adopted under the statutory procedures, at the
time the trust became effective, they would have been included within the word
“descendants.”[21]

The Texas
Supreme Court has consistently declined, however, to give equitable adoption
the same status as legal adoption.  That court has expressly held that equitable
adoption does not have all of the same legal consequences of a statutory
adoption and, importantly for this case, does not create a legal status of
parent and child.[22]  And the court expressly
rejected the argument that under section 3(b) and section 40 of the probate
code[23] (the sections of the
probate code on which Pam and Scott rely), an equitably adopted child has all
of the same rights under the laws of descent and distribution as would a biological
child.[24]  The court noted that the
language of section 3(b) “indicates a legislative assumption that our courts
had held that a child may be adopted by acts of estoppel, and thus that a legal
status of parent and child is created by acts of estoppel.  Not so.”[25]
 The court held that notwithstanding the language of those sections of the
probate code, under the law, a person cannot be adopted by estoppel, and
estoppel cannot create the legal status of parent and child.[26]

Pam
and Scott attempt to distinguish Heien and Asbeck on the facts, but
although those cases did not address the exact factual situation at issue in
this case, the Texas Supreme Court’s statement of the law in those cases does
apply,[27] and the legislature has
not amended the statutory language since that court’s decision in Heien
and Asbeck.  We are bound to follow the law as set out by that court.[28] 
If equitable adoption does not create the legal status of parent and child,
then even if Charles (and those claiming through him) would have been estopped
from denying that he had adopted Pam and Scott, this does not cause Pam and
Scott to be Charles’s children under the law.  We conclude therefore that, as a
matter of law, the term “descendant” does not include equitably adopted
children and that Maggie did not intend to include equitably adopted children.[29] 
Consequently, we do not address Pam and Scott’s arguments with respect to the
statute of limitations.  We overrule Pam and Scott’s first and second issues.

In their
third issue, Pam and Scott argue that the trial court erred by reducing the
award of costs to them and by refusing to award uncontroverted attorney’s fees
for appeals of this case.  We disagree.

Chase
Bank sued Pam and Scott under the trust code and under the Declaratory Judgment
Act.  For actions brought under either of these statutory provisions, the trial
court has discretion to award or deny attorney’s fees, including the discretion
to award fees to the prevailing or nonprevailing party.[30] 
Under both statutory provisions, an award of fees must be reasonable and
necessary, which are fact questions, as well as equitable and just, which are
questions of law left to the trial court’s discretion.[31]

Pam
and Scott complain about the trial court’s refusal to award them what they
contend were uncontroverted appellate fees and its decision to reduce their
“uncontroverted trial expenses.”  But this court has held that with respect to
attorney’s fees in declaratory judgment actions, the trial court has the discretion
to award less than the amount determined to be reasonable and necessary or to
not award any fees at all.[32]

Furthermore,
the case that Pam and Scott primarily rely upon, Ragsdale v. Progressive
Voters League,[33] is distinguishable
because the statute in that case did not require the trial court to consider
whether an award of fees and costs was equitable and just.  The statutes at
issue here, however, expressly require the trial court to make that consideration.[34]
 In other words, in the case relied on by Pam and Scott, whether the fees were
reasonable and necessary was the only relevant consideration, whereas in this
case, the trial court had to consider whether the fees were reasonable and
necessary as well as whether an award of fees was equitable and just.  And the other
cases relied upon by Pam and Scott discussed the reasonableness of
attorney’s fees, a fact issue on which uncontradicted evidence of such fees
would have relevance.  Those cases did not hold that when evidence of fees is
uncontroverted, the failure to award them is, as a matter of law, not equitable
and just.[35]

Furthermore,
Ragsdale and all of the other cases relied upon by Pam and Scott discuss
the reasonableness of an award of attorney’s fees to the prevailing
party.[36]  Not one of the cases
discusses whether the denial of an award of attorney’s fees to a nonprevailing
party is not equitable and just merely because the evidence of the fees is
uncontroverted.  And although the trial court’s conclusion that an award was
equitable and just was a prerequisite to Pam and Scott’s entitlement to an
award of fees and costs, Pam and Scott make no argument about why the denial in
this case was not equitable or just.  Accordingly, we hold that the trial court
did not abuse its discretion by reducing the award of costs to them and by
refusing to award uncontroverted attorney’s fees for appeals of this case.  We
overrule their third issue.

Robert’s
Cross-Appeal

In
his brief, Robert does not separate his arguments by issue.  Instead, he makes
arguments and then indicates parenthetically which issues each argument
supports.  Accordingly, rather than addressing his issues in turn, we will
address his arguments one by one and then state our holding as to all of the
issues at the end of our analysis.

All
of Robert’s arguments relate to two basic complaints:  that the award of
attorney’s fees was not equitable and just and that the evidence was insufficient
to support the award.

Sufficiency
of the Evidence as to “Equitable and Just”

Robert’s
first argument relates both to the sufficiency of the evidence and to whether
it was equitable and just.  He argues that the trial court abused its
discretion by awarding attorney’s fees to Pam and Scott because there was no
evidence that awarding such fees would be equitable or just.  He therefore impliedly
argues that whether an award is equitable and just is a fact question on which
Pam and Scott had the burden of proof.

But
the question of whether an award of fees is equitable and just is not a
question of fact; it is a question of law, and a matter that is committed to
the trial court’s sound discretion.[37]  Whether to award fees
depends on the trial court’s conclusion about whether an award is equitable and
just based on all the circumstances of the case, not just on evidence presented
by the party seeking the award.[38]

Pam
and Scott did put on evidence regarding the reasonableness and necessity of the
fees, and the trial court was well aware of the circumstances of the case,
including the history of the proceedings in the case and the fact that Pam and
Scott asserted a claim to the trust assets only after being brought into the
suit by Chase Bank.  Once they were brought into the suit, Pam and Scott had
the right to assert any claims or defenses that were not groundless and brought
in bad faith or for the purpose of harassment.[39]

Robert
contends that Pam and Scott’s attorney admitted that “this particular issue is
not one that we believe has much support or even discussion in Texas case
law.”  But from the context of the attorney’s statement (including the
remainder of that sentence—“so it is a novel situation which
required extensive research because of the facts necessary, in my opinion, to
prove adoption by estoppel, or equitable adoption”—which Robert did not include
in his brief), it is clear that the attorney was saying that this area of law
was not well-developed and required him to conduct extensive research.  Robert
points to no other evidence that Pam and Scott’s claims were brought in bad
faith or for purposes of harassment.  Thus, the trial court may have considered
that Pam and Scott pursued no claims against the trust until they were brought
into the case, that their claims were not asserted in bad faith or for purposes
of harassment, and that the law under these particular facts had not been
definitively established in this jurisdiction.  And, despite Robert’s assertion
to the contrary, after putting on evidence about the reasonableness and
necessity of attorney’s fees, Pam and Scott were not required to put on separate,
distinct evidence on the question of law as to whether an award of fees was
also equitable and just.  We therefore overrule Robert’s argument that there
was no evidence that the award of such fees would be equitable and just and
that the trial court therefore abused its discretion by awarding such fees.

Whether
Guiding Principles Support The Award as Equitable and Just

Robert
further argues that no guiding principles support the trial court’s award of
fees as just and equitable and that the award was arbitrary, unreasonable, and
an abuse of discretion.  Robert asserts three subarguments.  First, he argues
that the award of fees was not fair and right, and therefore was not equitable
and just, when the doctrine of equitable estoppel did not apply to this case as
a matter of law, Pam and Scott knew that their mother had refused to let
Charles adopt them, and their claim was barred by limitations.

We
disagree with Robert’s contention that because under the law, Pam and Scott’s
claim for equitable estoppel was “insurmountably precluded,” an award of
attorney’s fees to them could not be equitable and just.  As stated, Pam and
Scott asserted a right to the trust assets only after they were brought into
court by Chase Bank.  And we cannot say that the trial court abused its
discretion if it concluded that Pam and Scott did not pursue a claim while
knowing that it was “insurmountably precluded” under the law when, as noted
above, the law at one time did treat legally adopted and equitably adopted
children the same regarding inheritance rights; the statutes governing
inheritance of adopted children, on their face, appear to support their claim;
and neither the Texas Supreme Court nor this court has directly addressed the
question presented here.  We therefore reject Robert’s argument that, on this
ground, awarding Pam and Scott their attorney’s fees was not “fair and right”
and was therefore not equitable and just.

Robert
next argues that the award was not equitable and just because it did not
benefit the trust.  In support of this argument, he states that section 799 of
the probate code allows a probate court to deny a claim against an estate if
the court is not convinced that the claim is just.[40] 
He then points to a case in which the Dallas Court of Appeals sustained an
award of attorney’s fees assessed against an estate on the ground that it would
be unjust for an estate to retain the benefits of an attorney’s services
without paying for them when the evidence proved that the services had been
rendered under such circumstances as would notify the estate’s representative
that the attorneys were expecting to be paid by the representative.[41]

Robert
argues that here, unlike in Fortenberry, Pam and Scott’s claim did not
benefit the trust.  Thus, he appears to argue, because it is just to award
attorney’s fees for a party whose claims benefit an estate, it is therefore
unjust to award attorney’s fees against a trust to a party whose claims do not
benefit the trust.  Neither section 799 nor Fortenberry supports this
conclusion, and Robert cites to no other authority in support of his argument.[42] 
And, as Robert acknowledges in his brief, section 799 is not applicable to this
case.  Both section 799 and Fortenberry relate to authenticated claims
against a guardianship estate and not to an award of attorney’s fees in an
action involving a trust.  Accordingly, we reject this part of Robert’s
argument regarding whether the award was equitable and just.

Finally
under this argument, Robert asserts that the award was not equitable and just
because Pam and Scott did not prevail on their claim of equitable adoption.  He
points out that some courts have expressly held that it is not equitable and
just to award attorney’s fees to a party who does not prevail and that this
court has routinely linked a party’s right to recover attorney’s fees in a
declaratory judgment action to whether the party prevailed.

Robert
is correct that some courts have reversed awards for attorney’s fees as not
equitable and just upon reversing a declaratory judgment upon which the
attorney’s fees had been premised.[43]  But this court has
never set a bright line rule that it is never equitable and just to award
attorney’s fees to a nonprevailing party.  Instead, this court has repeatedly
noted that a trial court has the discretion in a declaratory judgment
proceeding to award fees to the nonprevailing party.[44]
 Whether the party prevailed in the action is a factor for the trial court to
consider and, in some cases, may be the most important factor, but it is not
alone determinative.  Accordingly, we reject Robert’s argument that because Pam
and Scott did not prevail, an award of attorney’s fees to them was necessarily
not equitable and just.  We hold that the “guiding principles” relied on by
Robert in his argument that an award was not equitable or just do not
demonstrate that the trial court abused its discretion in making the award.  To
the extent that Robert’s four issues rely on these arguments, we overrule that
part of each issue.

Sufficiency
of the Evidence

Robert’s
third issue asserts that the trial court abused its discretion in allowing
counsel for Pam and Scott to testify about attorney’s fees over an objection by
Robert based on the failure of Pam and Scott to produce their attorney’s fee
agreement in response to requests for disclosure.  Robert contends that because
they failed to produce their fee agreement in response to a request for
disclosure under civil procedure rule 194.1, then under rule 215.2[45]
and this court’s opinion in Texas Municipal League Intergovernmental Risk
Pool v. Burns,[46] Pam and Scott were
required to put on evidence that there was good cause for their failure to
timely disclose the fee agreement and that the failure to disclose it would not
unfairly surprise or prejudice Robert.  Robert argues that because Pam and
Scott put on no such evidence, the trial court should have refused to allow Pam
and Scott to put on testimony about their attorney’s fees.

Robert
does not point this court to any place in the record showing that he tendered
to Pam and Scott a request for the production of the fee agreement with their
attorney.[47]  Pam and Scott point out
that Robert did request the disclosure of information, in accordance with rule
192.3(e),[48] relating to any
testifying experts, including the expert’s name and contact information,
subject matter on which the expert will testify, the general substance of the
expert’s mental impressions and opinions, and “[a]ll documents, tangible
things, reports, models, or data compilations that have been provided to, reviewed
by, or prepared by or for the expert in anticipation of the expert’s
testimony.” [Emphasis added.]  And Pam and Scott provided this information
with respect to their attorney.  They disclosed the identity and contact
information of their attorney, the fact that he would testify regarding
attorney’s fees, and that he was “expected to testify that the attorneys’ fees
sought by [Pam and Scott] through trial . . . are reasonable and necessary” and
that “[t]hose fees are expected to be at least $60,000 through trial.”  The
only request for the production of any documents under this request for
disclosure were for those documents that were provided to, reviewed by, or
prepared in anticipation of the expert’s testimony.  Robert does not argue that
the fee agreement between Pam and Scott and their attorney was prepared,
reviewed, or provided to the attorney in anticipation of the attorney’s
testimony.  Because Robert did not request the production of the fee agreement,
Pam and Scott were not required to produce it.  Accordingly, they were not required
to show good cause for or the lack of surprise or prejudice resulting from the
failure to produce it.

The
cases cited by Robert are distinguishable.  In Texas Municipal League
Intergovernmental Risk Pool, the appellants had made requests for
disclosure and for production of documents, and it was undisputed that they had
requested the case notes of appellee’s attorneys and the billing records
regarding their fees.[49]  Similarly, Comerica
Bank-Texas v. Hamilton is distinguishable in that it was decided under
former rule of procedure 215(5), and, in that case, Hamilton had sought
discovery of “[a]ll reports of experts, and all documents that have been
reviewed and/or relied upon by any of [the Bank’s] experts,” as well as “[a]ll
documents evidencing or relating to [the Bank’s] claims for attorney’s fees . . . ,
including the attorney’s fees statements and/or billings for which [the Bank]
will seek recovery of herein.”[50]  In this case, Robert
has not pointed out any evidence in the record that he requested the production
of Pam and Scott’s agreement with their attorney regarding fees.  Thus, Pam and
Scott could not be subject to rule 193.6’s mandatory penalty for failure to
disclose the agreement and were not required to establish the exception to the
rule for good cause and a lack of prejudice or surprise.  We therefore hold
that the trial court did not abuse its discretion by allowing Pam and Scott’s
attorney to testify about his attorney’s fees.

Robert’s
argument that there was no evidence to show that the award was reasonable or
necessary was premised on his argument that the trial court should have
excluded the testimony of Pam and Scott’s attorney for failing to disclose the
fee agreement.  He makes no other argument about the sufficiency of the
evidence regarding the reasonableness or necessity of the attorney’s fees and
whether Pam and Scott’s attorney should not have been allowed to testify. 
Accordingly, we overrule Robert’s third and fourth issues.  Furthermore, because
we have overruled all of Robert’s arguments about the sufficiency of the
evidence regarding whether the award was equitable and just, we overrule
Robert’s first and second issues.

Conclusion

Having
overruled Pam and Scott’s three issues and Robert’s four issues, we affirm the
trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
MEIER, and GABRIEL, JJ.

 

DELIVERED:  October 27, 2011









[1]See Tex. R. App. P. 47.4.





[2]Tex. R. Civ. P. 166a(c); Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).





[3]Mann Frankfort, 289
S.W.3d at 848; 20801, Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).





[4]Mann Frankfort, 289
S.W.3d at 848.





[5]See Wal-Mart Stores,
Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City of Keller v.
Wilson, 168 S.W.3d 802, 822–24 (Tex. 2005).





[6]Mann Frankfort, 289
S.W.3d at 848.





[7]Id.





[8]See Cutrer v. Cutrer,
162 Tex. 166, 174, 345 S.W.2d 513, 519 (1961) (interpreting the trust instrument
to determine the intent of the settlor at the time that the trust was created);
Nail v. Thompson, 806 S.W.2d 599, 600 (Tex. App.—Fort Worth 1991, no
writ) (stating that to determine who should take under a testamentary trust, a
court looks to the state of the law at the time the settlor died in conjunction
with the language of the trust instrument).





[9]See Mabrey v.
SandStream, Inc., 124 S.W.3d 302, 314 (Tex. App.—Fort Worth 2003, no pet.)
(“In interpreting contract language, we ascertain the true intentions of the parties
as expressed in the entire contract in an effort to harmonize and give effect
to all provisions so that none will be rendered meaningless.”); Eckels v.
Davis, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied)
(applying the same rule to the interpretation of a trust instrument).





[10]See Mabrey, 124
S.W.3d at 314; Eckels, 111 S.W.3d at 694.





[11]See Eckels, 111
S.W.3d at 694.





[12]Reilly v. Huff,
335 S.W.2d 275, 279 (Tex. Civ. App.—San Antonio 1960, no writ).





[13]In re Ray Ellison
Grandchildren Trust, 261 S.W.3d 111, 120 (Tex. App.—San Antonio 2008, pet.
denied) (quoting Black’s Law Dictionary 476 (8th ed. 2004)).





[14]Id.





[15]Cavanaugh v. Davis,
149 Tex. 573, 576, 235 S.W.2d 972, 973–74 (1951); see also Cubley v. Barbee,
123 Tex. 411, 432, 73 S.W.2d 72, 83 (1934).





[16]Jones v. Guy, 135
Tex. 398, 402, 143 S.W.2d 906, 908 (1940).





[17]In re Ray Ellison
Grandchildren Trust, 261 S.W.3d at 122.





[18]See id.





[19]Id. at 123.





[20]Id.





[21]See Cutrer, 162
Tex. at 174, 345 S.W.2d at 519; Nail, 806 S.W.2d at 600.





[22]Moran v. Adler, 570
S.W.2d 883, 888 (Tex. 1978); Heien v. Crabtree, 369 S.W.2d 28, 29–30
(Tex. 1963); Asbeck v. Asbeck, 369 S.W.2d 915, 916 (Tex. 1963).





[23]Tex. Prob. Code Ann. §
3(b) (defining “child” to include a child adopted “by acts of estoppel”), § 40
(allowing for inheritance through an adoptive parent) (West 2003).





[24]Asbeck, 369 S.W.2d
at 916.





[25]Heien, 369 S.W.2d at
29–30.





[26]Id.





[27]See Lubbock Cnty.,
Tex. v. Trammel’s Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002)
(stating that once the Supreme Court announces a proposition of law, the
decision becomes binding precedent, and “it is not the function of a court of
appeals to abrogate or modify established precedent”); Curry v. Williman,
834 S.W.2d 443, 445 (Tex. App.—Dallas 1992, writ denied) (noting that the
legislature had not amended the statutory language since Heien).





[28]Lubbock Cnty., 80
S.W.3d at 585.





[29]See Cutrer, 162
Tex. at 174, 345 S.W.2d at 519 (determining the settlor’s intent at the time
that the trust was created); In re Ray Ellison Grandchildren Trust, 261
S.W.3d at 120 (considering the term “descendents”).





[30]Tex. Prop. Code Ann. §
114.064 (West 2007); Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008);
Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998); Smith v. Huston,
251 S.W.3d 808, 830 (Tex. App.—Fort Worth 2008, pet. denied); Lesikar v.
Moon, 237 S.W.3d 361, 375 (Tex. App.—Houston [14th Dist.] 2007, pet.
denied).





[31]Bocquet, 972
S.W.2d at 21; Lesikar, 237 S.W.3d at 375.





[32]NP Anderson Cotton
Exch., L.P. v. Potter, 230 S.W.3d 457, 468 (Tex. App.—Fort Worth 2007, no
pet.); see also Bocquet, 972 S.W.2d at 21 (noting that a “court may
conclude that it is not equitable or just to award even reasonable and
necessary fees”).





[33]801 S.W.2d 880, 882 (Tex.
1990).





[34]Compare Tex. Elec.
Code Ann. § 253.131(e) (West 2003) with Tex. Prop. Code Ann. § 114.064 and
Tex. Civ. Prac. & Rem. Code Ann. § 37.009.





[35]See Smith v. Patrick
W.Y. Tam Trust, 296 S.W.3d 545, 548 (Tex. 2009); Midland W. Bldg. L.L.C.
v. First Serv. Air Conditioning Contractors, Inc., 300 S.W.3d 738, 739
(Tex. 2009).





[36]See Smith, 296
S.W.3d at 548; Midland W. Bldg., 300 S.W.3d at 739; Innovative
Mailing Solutions, Inc. v. Label Source, Inc., No. 02-09-00129-CV, 2010 WL
395219, at *5 (Tex. App.—Fort Worth Feb. 4, 2010, no pet.) (mem. op.); AMX
Enters., L.L.P. v. Master Realty Corp., 283 S.W.3d 506, 516 (Tex. App.—Fort
Worth 2009, no pet.); In re S.N.A., No. 02-07-00349-CV, 2008 WL 4938108,
at *2 (Tex. App.—Fort Worth Nov. 20, 2008, no pet.) (mem. op.); Lee v. Perez,
120 S.W.3d 463, 469 (Tex. App.—Houston [14th Dist.] 2003, no pet.).





[37]See Bocquet, 972
S.W.2d at 21 (stating that on review, the court of appeals must determine
whether the trial court abused its discretion by awarding fees when there was
insufficient evidence that the fees were reasonable and necessary or when the
award was inequitable and just); Smith, 251 S.W.3d at 830.





[38]See, e.g., In re
Estate of Kuykendall, 206 S.W.3d 766, 772 (Tex. App.—Texarkana 2006, no
pet.) (“The trial court’s decision whether to award attorney’s fees in a
declaratory judgment case depends on the court’s conclusion whether it is just
and equitable to do so under all the circumstances of the case, not on the
quantum of proof as to the amount incurred or the reasonableness and necessity
of such fees.”).





[39]See Tex. R. Civ.
P. 13, 85, 97.





[40]See Tex. Prob.
Code Ann. § 799(c) (West 2003) (“[I]f the court is not satisfied that [a claim]
is just, the court shall examine the claimant . . . and hear other evidence
necessary to determine the issue. If . . .  the court is not convinced that the
claim is just, the court shall disapprove the claim.”).





[41]See In re Guardianship
of Fortenberry, 261 S.W.3d 904, 914 (Tex. App.—Dallas 2008, no pet.).





[42]See Tex. R. App.
P. 38.1(i) (requiring briefs to contain clear and concise arguments “with
appropriate citations to authorities”).





[43]See Ski River Dev.,
Inc. v. McCalla, 167 S.W.3d 121, 143 (Tex. App.—Waco 2005, pet. denied); Treetop
Apartments Gen. P'ship v. Oyster, 800 S.W.2d 628, 630 (Tex. App.—Austin
1990, no writ).





[44]See City of Willow
Park v. Bryant, 763 S.W.2d 506, 511 (Tex. App.—Fort Worth 1988, no writ); see
also Rhino Real Estate Invs., Inc. v. City of Runaway Bay, No. 02-08-00340-CV,
2009 WL 2196131, at *4 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem.
op.); Baker Boulevard Partners, Ltd. v. Sparks, No. 02-06-00302-CV, 2007
WL 2460362, at *1 n.4 (Tex. App.—Fort Worth Aug. 29, 2007, no pet.) (mem. op.);
Noe v. McLendon, No. 02-06-00062-CV, 2007 WL 2067844, at *3 (Tex.
App.—Fort Worth July 19, 2007, no pet.) (mem. op.).





[45]We assume Robert intended
to cite rule 193.6(a).  Rule 193.6(a) provides that a party who fails to make a
discovery response in a timely manner may not introduce evidence on the
information that was not disclosed unless the trial court finds that there was
good cause for the failure to disclose and the other parties will not be
unfairly surprised or prejudiced by the disclosure.  Tex. R. Civ. P. 193.6(a). 
Rule 215.2 relates to discovery sanctions and merely gives a trial court
discretion to prohibit a party from introducing a matter into evidence when the
party failed to comply with discovery requests.  Rule 193.6(a)’s exclusion of
evidence, on the other hand, is mandatory.  See Am. Flood Research,
Inc. v. Jones, 192 S.W.3d 581, 584 (Tex. 2006); Alvarado v. Farah Mfg.
Co., 830 S.W.2d 911, 914 (Tex. 1992).





[46]See 209 S.W.3d
806, 817 (Tex. App.—Fort Worth 2006, no pet.).





[47]See Tex. R. Civ.
P. 192.1(b) (providing that a party may request the production and inspection
of documents and tangible things).





[48]See Tex. R. Civ.
P. 192.3(e) (listing the information that is discoverable with respect to a
testifying expert).





[49]209 S.W.3d at 816.





[50]No. 05-93-001804-CV, 1997
WL 421214, at *2 n.2 (Tex. App.—Dallas July 28, 1997, no writ) (not designated
for publication).